[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15933
_____

D.C. Docket No. 8:96-cr-00144-EAK-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LOUIS JEAN HIPPOLYTE,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 14, 2013)

Before TJOFLAT and HILL, Circuit Judges and HUCK,[*] District Judge.

_____

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of
Florida, sitting by designation.

TJOFLAT, Circuit Judge:

On August 9, 1996, a jury found Louis Jean Hippolyte guilty on one count of conspiracy to possess with intent to distribute crack cocaine (Count One), two counts of distribution of crack cocaine (Counts Four and Five), one count of possession of crack cocaine with intent to distribute (Count Seven), and one count of possession of cocaine powder with intent to distribute (Count Six).[1] On November 1, 1996, the District Court sentenced Hippolyte to concurrent prison terms. On Counts One, Four, Five, and Seven, the court imposed on each count the statutory mandatory minimum sentence of 240 months;[2] on Count Six, the court imposed a concurrent term of 189 months. On October 28, 1997, this court affirmed his convictions and sentences. United States v. Hippolyte, 130 F.3d 442 (11th Cir. 1997) (Table).

On October 31, 2011, Hippolyte moved the District Court to reduce his sentences on Counts One, Four, Five, and Seven pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 750 to the U.S. Sentencing Guidelines, which

---

[1] Count One charged a violation of 21 U.S.C. § 846. Counts Four, Five, Six, and Seven charged violations of 21 U.S.C. § 841(a).

[2] See 21 U.S.C. § 841(b)(1)(A)(iii) (1996) (imposing a statutory mandatory minimum sentence of 20 years' imprisonment for any case involving at least 50 grams of crack cocaine where the defendant has previously been convicted of a felony drug offense). Hippolyte had previously been convicted of felony possession of marijuana and, at sentencing in the instant case, was held accountable for 220 grams of crack cocaine.

2

lowered the base offense level for crack cocaine offenses,[3] and the Fair Sentencing

Act of 2010 (the "FSA"), Pub. L. No. 111-220, 124 Stat. 2372.  The District Court

denied his motion on the ground that because he had received the statutory

mandatory minimum sentence for his crack cocaine offenses, he was ineligible for

a sentence reduction under § 3582(c)(2).  He appeals its decision.  We affirm.

## I.

Hippolyte argued in the District Court, as he does on appeal, that the FSA

applies in § 3582(c)(2) proceedings, such that the District Court had the authority

to reduce his sentences on Counts One, Four, Five, and Seven below the statutory

mandatory minimum.  We disagree.  To explain why, we revisit why and how the

District Court structured his sentences as it did in November 1996.

The presentence investigation report (the "PSI"), which the District Court

adopted, determined that Hippolyte was responsible for 220 grams of crack

cocaine and 544.9 grams of powder cocaine.  Because there was more than one

controlled substance at issue,[4] the PSI applied the drug equivalency tables[5] and

---

[3]  18 U.S.C. § 3582(c)(2) allows a district court to reduce a defendant's term of imprisonment after sentencing "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. . . . [T]he court may reduce the term of imprisonment . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

[4]  See U.S.S.G. § 2D1.1 cmt. n.10 (1995).  This application note provides a procedure for finding a single offense level when there are two or more different controlled substances.  Each controlled substance is converted to its marijuana equivalent using the Drug Equivalency Tables

3

converted these amounts to the equivalent of 4,508.98 kilograms of marijuana.

This quantity resulted in a total offense level of 34.[6]  Because Hippolyte had two

prior convictions for which he had received sentences of probation, he was

assigned criminal history category II.  U.S.S.G. § 4A1.1(c) (1995).  Under the

Sentencing Table, the sentence range for an offense level of 34 and criminal

history category II was 168 to 210 months' imprisonment.  U.S.S.G. Ch. 5, Pt. A

(1995).  The statutory mandatory minimum sentence for crack cocaine offenses

controlled, so Hippolyte received sentences of 240 months' imprisonment for each

of those offenses.  See 21 U.S.C. § 841(b)(1)(A)(iii) (1996) [7]; U.S.S.G. §

5G1.1(c)(2) (1995).

If Amendment 750 were applied in his case, Hippolyte's offense level

would be reduced from 34 to 30,[8] resulting in a new sentence range of 108 to 135

---

of U.S.S.G. § 2D1.1 cmt. n.10, then the marijuana equivalents are added to find a grand total, which is then used to find the offense level in the Drug Quantity Table of U.S.S.G. § 2D1.1(c).

[5] See U.S.S.G. § 2D1.1 cmt. n.10 (1995) Drug Equivalency Tables. One gram of crack cocaine was the equivalent of twenty kilograms of marijuana and one gram of powder cocaine was the equivalent of 200 grams of marijuana.  As a result, the 220 grams of crack cocaine attributed to Hippolyte were equivalent to 4,400 kilograms of marijuana, and the 544.9 grams of powder cocaine attributed to Hippolyte were equivalent to 108.98 kilograms of marijuana, for a grand total of 4,508.98 equivalent kilograms of marijuana.

[6] See U.S.S.G. § 2D1.1(c)(3) (1995) Drug Quantity Table, assigning offense level 34 to an amount of marijuana of "[a]t least 3,000 [kilograms] but less than 10,000 [kilograms]."

[7] The statutory mandatory minimum sentence is 20 years' imprisonment for any case involving 50 grams or more of crack cocaine where the defendant has previously been convicted of a felony drug offense.  See note 2, supra.

[8] Under Amendment 750, the marijuana-to-crack conversion ratio was reduced to 3,751-to-1 from 20,000-to-1.  See U.S.S.G. § 2D1.1 cmt. n.10(D) (2011).  Thus, the 220 grams of crack

months' imprisonment.[9]  And if the FSA were applied as well, the statutory

mandatory minimum for his crack cocaine offenses would be 120 months,[10]

instead of 240 months, resulting in a new sentence range of 120 to 135 months.

## II.

Hippolyte's position is that both Amendment 750 and the FSA apply in his §

3582(c)(2) proceeding.  He advances the novel argument that one of the changes

made by Amendment 759 to the Sentencing Guidelines, which became effective on

November 1, 2011, was to add a brand-new definition of "applicable guideline

range" to U.S.S.G. §1B1.10, and that this new definition significantly changes the

way sentencing reductions work under § 3582(c)(2), in Hippolyte's favor.  See

Amendment 759, U.S.S.G. App. C – Vol. III, at 416 (2011), codified at U.S.S.G. §

1B1.10 cmt. n.1(A) (2011).[11]

---

cocaine attributed to Hippolyte would now be equivalent to 785.62 kilograms of marijuana.  As the marijuana-to-powder-cocaine conversion ratio remained constant at 200-to-1, id., the amount of powder cocaine attributed to Hippolyte, 544.9 grams, would still be equivalent to 108.98 kilograms of marijuana.  Thus, the total equivalent kilograms of marijuana would now be 894.6 kilograms.  See U.S.S.G. § 2D1.1(c)(5) (2011) Drug Quantity Table, assigning offense level 30 to an amount of marijuana of "[a]t least 700 [kilograms] but less than 1,000 [kilograms]."

[9] See U.S.S.G. Ch. 5, Pt. A (2011), which shows that for offense level 30 and criminal history category II, the guideline range is 108 to 135 months' imprisonment.

[10] See 21 U.S.C. § 841(b)(1)(B)(iii) (2011) (imposing a statutory mandatory minimum sentence of 10 years' imprisonment for any case involving at least 28 grams but less than 280 grams of crack cocaine where the defendant has previously been convicted of a felony drug offense).  As noted, Hippolyte had previously been convicted of felony possession of marijuana and was responsible for 220 grams of crack cocaine.

[11] Amendment 759 also made four other changes to the Sentencing Guidelines.  First, it added Amendment 750 to § 1B1.10(c), thereby making Amendment 750's application in §

Hippolyte correctly points out that Amendment 759 defined the term "applicable guideline range" for the first time ever in the Sentencing Guidelines. Under Amendment 759, a defendant's applicable guideline range is now defined as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." U.S.S.G. § 1B1.10 cmt. n.1(A) (2011). Prior to Amendment 759, this court had defined the "applicable guideline range" as "the scope of sentences available to the district court, which could be limited by a statutorily imposed mandatory minimum 'guideline sentence.'" United States v. Williams, 549 F.3d 1337, 1340 (11th Cir. 2008). In other words, prior to Amendment 759 this court defined "applicable guideline range" to include any applicable mandatory minimum sentence. But now, Hippolyte argues, that definition and the cases based on it are obsolete because the Sentencing Commission has, in Amendment 759,

---

3582(c)(2) proceedings retroactive. See note 12, infra. Second, it made otherwise appropriate sentence reductions inappropriate for defendants that originally received sentences below the guideline range unless the departure below the guideline range was for "substantial assistance to authorities" under U.S.S.G. § 5K1.1. Third, it added Application Note 6 to § 1B1.10's Commentary, see note 15, infra, requiring courts to use the Sentencing Guidelines in force at the time of a § 3582(c)(2) proceeding. Fourth, it added a sentence to § 1B1.10 explaining that the Supreme Court has held that § 3582(c)(2) proceedings are not governed by United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and that § 1B1.10 is binding on the courts. See Dillon v. United States, __U.S.__, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010).

defined "applicable guideline range" to include only the offense level and criminal history category, and to exclude any statutory mandatory minimums.

This is important because Commentary Application Note 1(A) to U.S.S.G. § 1B1.10 says that "[e]ligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (c)[12] that lowers the applicable guideline range."  Hippolyte argues that in accordance with this Application Note, he was <u>eligible for consideration</u> under § 3582(c)(2) because it is undisputed that Amendment 750 lowered his applicable guideline range—as Hippolyte defines it—from 168 to 210 months to 108 to 135[13] months because Amendment 750 lowered his offense level from 34 to 30.[14]  Thus, he argues that because his applicable guideline range was lowered he is eligible for § 3582(c)(2) relief.[15]  And he argues that the FSA applies to § 3582(c)(2) proceedings.  Thus, the statutory mandatory minimum sentence applicable to his crack cocaine

---

[12]  Amendment 750 is listed in subsection (c).

[13]  <u>See</u> note 9, <u>supra</u>, for explanation of why his guideline range is 108 to 135 months' imprisonment under Amendment 750.

[14]  Hippolyte's criminal history category remained the same at II.  <u>See</u> note 8, <u>supra</u>, for calculations supporting the reduction in Hippolyte's offense level from 34 to 30 under Amendment 750.

[15]  Hippolyte also correctly points out that Amendment 759 also added a Commentary Application Note 6 to U.S.S.G. § 1B1.10 requiring a court to use the version of the Sentencing Guidelines that is in effect at the time of the sentence reduction proceedings.  Thus, Hippolyte argues, the District Court should have used the new definition of "applicable guideline range" in Amendment 759, which became effective November 1, 2011, when it considered and denied Hippolyte's motion for a sentence reduction on November 29, 2011.

offenses is 120 months instead of 240,[16] and his sentences should be reduced to a term from 120 to 138 months.

In Dorsey v. United States, __ U.S. __, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012), the Supreme Court held that the more lenient statutory mandatory minimum sentences for drug convictions found in the FSA apply to defendants who committed crimes before the FSA but were sentenced subsequent to its enactment.  In addition to reducing minimum sentences, the FSA also required the Sentencing Commission to promptly issue "conforming amendments" that would lower sentence ranges in such a way as to make them proportional to the new mandatory minimum sentences.  The Dorsey Court held that even though the Savings Statute, 1 U.S.C. § 109, required application of the FSA to pre-Act offenders to be express in the FSA, and the FSA was silent on the subject, there was a "fair implication" that Congress's goals of consistency, avoiding disparity, and eliminating unfairness implied that it intended the new minimums to so apply to make mandatory minimums and the new guideline sentence ranges proportional. Dorsey, 132 S.Ct. at 2326.  Hippolyte argues that just as in post-FSA sentencing of pre-FSA offenders, Congress also intended that the FSA apply to drug crime sentence reductions under § 3582(c)(2) for the same reasons articulated in Dorsey,

---

[16]  21 U.S.C. § 841(b)(1)(B)(iii) (2012); see note 10, supra, for explanation of why Hippolyte's statutory mandatory minimum under the FSA is 10 years instead of 20.

and that therefore the statutory mandatory minimums found in the FSA must be applied in conjunction with the retroactive guideline amendment that the FSA directed the Sentencing Commission to promulgate.  In sum, Hippolyte argues that it would be inconsistent to apply the more lenient sentence ranges of Amendment 750, but keep the harsh pre-FSA mandatory minimums in § 3582(c)(2) proceedings; they should thus be employed in tandem to eliminate disparities in sentencing.

Finally, Hippolyte argues that there is no case on point that applies to the facts of his case.  Hippolyte cites United States v. Berry, 701 F.3d 374 (11th Cir. 2012), in which this court affirmed the denial of a sentence reduction for Berry, a career offender, see U.S.S.G. § 4B1.1, who was seeking application of the FSA in a § 3582(c)(2) proceeding, as the closest case.  But Hippolyte argues that Berry is inapposite because Berry was a career offender, not a drug offender whose sentence was determined by the statutory mandatory minimum provision of 21 U.S.C. § 841(b)(1).  And he argues that Berry's sentence was determined solely by his status as a career offender; as such, Berry relied solely on the FSA in attempting to get his sentence reduced under § 3582(c)(2).  He argues that he, unlike Berry, relies on the FSA and Amendment 750, which adjusts the applicable guideline range and thus makes him eligible for a sentence reduction under § 3582(c)(2).

9

III.

A district court may modify a sentence if the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). "The grounds upon which a district court may reduce a defendant's sentence pursuant to § 3582(c)(2) are quite narrow." Berry, 701 F.3d at 376 (citing United States v. Armstrong, 347 F.3d 905, 909 (11th Cir. 2003)). "The Sentencing Commission must have amended the Sentencing Guidelines, pursuant to 28 U.S.C. § 994(*o*), that guidelines amendment must have lowered the defendant's sentencing range, and it must be one that is listed in U.S.S.G. § 1B1.10(c)." Id. (citing 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a)(1) & cmt. n.1(A); Armstrong, 347 F.3d at 909.).

As explained in Berry, "where a retroactively applicable guideline amendment reduces a defendant's base offense level, but does not alter the sentencing range upon which his or her sentence was based, § 3582(c)(2) does not authorize a reduction in sentence." Id. (quoting United States v. Moore, 541 F.3d 1323, 1330 (11th Cir. 2008); citing U.S.S.G. § 1B1.10(a)(2)(B)). "In other words, a reduction is not authorized if the amendment does not actually lower a defendant's applicable guideline range 'because of the operation of another guideline or statutory provision,' such as a statutory mandatory minimum prison term." Id. (quoting U.S.S.G. § 1B1.10 cmt. n.1(A)). So when a defendant's

10

sentence is based on a statutory mandatory minimum under 21 U.S.C. § 841(b)(1) that is above the applicable guideline range, "Amendment 750 does not lower that guidelines sentence, and the defendant is not eligible for a § 3582(c)(2) sentence reduction." Id. (citing United States v. Glover, 686 F.3d 1203, 1207–08 (11th Cir. 2012)).

To begin with, we are unpersuaded that Hippolyte's interpretation of Amendment 759's new definition of applicable guideline range is correct. Amendment 759 defines the applicable guideline range as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." U.S.S.G. §1B1.10 cmt. n.1(A) (2011). Section 1B1.1(a) prescribes an eight-step procedure for determining the applicable guideline range. Steps one through five determine the defendant's offense level. Step six determines the defendant's criminal history category. Step seven directs use of the Sentencing Table to find the guideline range by cross-referencing the previously-determined offense level and criminal history category. Step eight directs use of Chapter Five Parts B through G to determine various sentencing requirements and options. Section 5G1.1(b) provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline

11

sentence." U.S.S.G. § 5G1.1(b). Thus, when one uses § 1B1.1(a) to determine the applicable guideline range, one necessarily is required to take into account the mandatory minimum sentences that may be statutorily required.

Further, the new definition of applicable guideline range found in Amendment 759 nowhere mentions statutorily required mandatory minimum sentences. It does say that the applicable guideline range should be calculated "before consideration of any departure provision in the Guidelines Manual or any variance." U.S.S.G. § 1B1.10 cmt. n.1(A). But a mandatory minimum sentence is neither a departure provision nor a variance. A departure provision is a change to a sentencing guideline range based on, e.g., substantial assistance to authorities. See U.S.S.G. § 5K1.1 (2011). A variance is a sentence imposed that is outside the Guidelines Manual guideline range. See, e.g., Gall v. United States, 552 U.S. 38, 47, 128 S.Ct. 586, 594–95, 169 L.Ed.2d 445 (2007) (discussing variances, or sentences outside the guideline range, and holding that there need not be extraordinary circumstances to justify a variance). What is more, Amendment 759 itself explained[17] that the reason for adding the definition of applicable guideline range to the Sentencing Guidelines was that there was a circuit split over which specific departures should be considered part of the sentencing range. Several

---

[17] See Amendment 759, U.S.S.G. App. C – Vol. III, at 421 (Nov. 2011).

12

courts of appeals had held that some departures were part of the applicable guideline range, while others had held that no departures should be considered part of the applicable guidelines range.[18]  Amendment 759 issued to clear up this confusion by specifying that no departures are part of the applicable guideline range.  In fine, it is clear that the new definition of applicable guideline range has nothing to do with mandatory minimums and does nothing to alter this court's rule that the applicable guideline range is "the scope of sentences available to the district court, which could be limited by a statutorily imposed mandatory minimum 'guideline sentence.'"  United States v. Williams, 549 F.3d 1337, 1340 (11th Cir. 2008).  As a result, Hippolyte's arguably creative argument to the contrary fails.

Here, the District Court did not err in denying Hippolyte's § 3582(c)(2) motion.  As noted supra, note 3, § 3582(c)(2) requires that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission."  The Sentencing Guidelines explain that a

> reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with th[e] policy statement if . . . an amendment . . . is applicable to a defendant but the amendment does not have the effect of lowering the defendant's

---

[18] Id. ("The First, Second, and Fourth Circuits have held that, for § 1B1.10 purposes, at least some departures (e.g. departures under § 4A1.3 (Departures Based on Inadequacy of Criminal History Category) (Policy Statement)) are considered before determining the applicable guideline range, while the Sixth, Eighth, and Tenth Circuits have held that 'the only applicable guideline range is the one established before any departures.'").

13

applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment).

United States v. Glover, 686 F.3d 1203, 1206 (11th Cir. 2012) (emphasis in original) (quoting U.S.S.G. § 1B1.10 cmt. n.1(A)).  Amendment 750 has no effect on Hippolyte's sentence because it did not alter the statutory mandatory minimum sentence Hippolyte received.

As Berry explained, even if Hippolyte could bring his § 3582(c)(2) claim, it would fail because the FSA does not apply retroactively to his 1996 sentence. "Nothing in the FSA extinguishes the statutory mandatory minimum sentence or penalty already imposed in Berry's case before the FSA's enactment.  We agree with every other circuit to address the issue that there is 'no evidence that Congress intended [the FSA] to apply to defendants who had been sentenced prior to the August 3, 2010 date of the Act's enactment.'".  Berry, 701 F.3d at 377 (quoting United States v. Baptist, 646 F.3d 1225, 1229 (9th Cir. 2011) (citing cases)).  Berry explained that the general savings clause in 1 U.S.C. § 109 required the FSA to say so expressly if it were to apply to defendants already sentenced.  Berry also interpreted Dorsey and found no suggestion in it "that the FSA's new mandatory minimums should apply to defendants, like Berry, who were sentenced long before the FSA's effective date."  Id. at 377.  Berry quoted the Court's statement in Dorsey that "in federal sentencing the ordinary practice is to apply new penalties to

14

defendants not yet sentenced, while withholding that change from defendants already sentenced." Id. at 378.

Hippolyte's attempts to distinguish Berry are unavailing. First, Hippolyte argues that Berry was a career offender under U.S.S.G. § 4A1.1, whereas Hippolyte was sentenced under the statutory mandatory minimums of 21 U.S.C. § 841(b)(1). We held in United States v. Mills that such a distinction lacks substance. 613 F.3d 1070, 1078 (11th Cir. 2010) ("Although Moore involved defendants with career offender designations, those designations acted like statutory mandatory minimums."). Second, Hippolyte argues that Berry relied solely on the FSA in advancing his § 3582(c)(2) claim, while Hippolyte advances his claim under both the FSA and Amendment 750. But, as shown, Amendment 750 has no application here because it does not lower Hippolyte's guidelines sentence range. Thus, this distinction too lacks substance. Berry controls and we follow it here.

Because the FSA does not apply to Hippolyte's case, the statutory mandatory minimums that do are the ones that were in place when Hippolyte was sentenced in 1996. Section § 3582(c)(2) does not authorize a sentence reduction if a guidelines amendment does not have the effect of reducing the defendant's sentence. For the foregoing reasons, the judgment of the District Court is

AFFIRMED.

15