FUENTES, Circuit Judge,
concurring in part and concurring in the judgment:
I join the judgment vacating Herbert’s and Roe’s sentences. I concur with the majority that the new definition of “applicable guideline range” provided by Amendment 759 to the Sentencing Guidelines, which clarifies when a defendant is eligible for resentencing based on certain substantive amendments to the Guidelines, *68 supersedes our holding in United States v. Doe, 564 F.3d 305 (3d Cir.2009). Ante at 61-62. I write separately because, unlike the majority, I do not find any ambiguity in the new definition of “applicable guideline range.” -In my view, the Federal Sentencing Act of 2010 (“FSA”), made applicable to Herbert and Roe (“Petitioners”) through Amendment 750 to the Guidelines, lowered their “guideline range that corresponds to the offense level and criminal history category determined pursuant to § lBl.l(a).” U.S.S.G. § 1B1.10 app. n.l(A) (2011); see also U.S.S.G. app. C, amend. 750 (Nov. 1, 2011). Accordingly, I would hold that Petitioners are eligible for resentencing under 18 U.S.C. § 3582(c)(2) based on the plain text of Amendment 759. I would not resort to the rule of lenity when a clear answer is provided by the language of the Guidelines.
A. The Text of the Application Notes to Section IB 1.10
To be eligible for resentencing consistent with 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, Petitioners must meet two requirements: (1) their sentences must be “based on” a Guidelines range, and (2) an applicable Guidelines amendment must have “the effect of lowering” that range. United States v. Thompson, 682 F.3d 285, 290 (3d Cir.2012). The relevant issue here is whether Petitioners meet the second part of this test based on the Fair Sentencing Act amendments to the crack-cocaine Guidelines, which ultimately turns on whether the amendments lowered Petitioners’ “applicable guideline range.”
In Doe we held that defendants such as Petitioners who were convicted of crack-cocaine related offenses and exposed to a statutory mandatory minimum sentence that exceeded their guideline range, calculated under U.S.S.G. § lBl.l(a)(7), but were sentenced below that minimum pursuant to a substantial assistance motion based on U.S.S.G. § 5K1.1, were ineligible for resentencing. See Doe, 564 F.3d at 309. We reasoned that “applicable guideline range,” a term then not defined by the Guidelines, referred to the statutory minimum sentence calculated at step 8 of the sentencing process, which was not affected by the crack-cocaine amendments. Id. at 312. We rejected the contention that “applicable guideline range” referred to the range calculated based on the defendant’s offense level and criminal history category, under step 7 of the initial sentencing calculation, U.S.S.G. § lBl.l(a)(7). Id. at 311.[1]
Amendment 759, however, for the first time defined “applicable guideline range” by amending Application Note 1(A) of § 1B1.10. The effect of this amendment is that the Guidelines now explain that “[e]ligibility for [resentencing] under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment ... that lowers ... the guideline range that corresponds to the offense level and criminal history category determined pursuant to § lBl.l(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance.” U.S.S.G. § 1B1.10 app. n. 1(A) (2011) (emphasis added); see also U.S.S.G. app. C, amend. 759 (Nov. 1, 2011).
This language could not be clearer in demonstrating that our conclusion in Doe was incorrect. Following the Application Note’s reference to § lBl.l(a), it is imme *69 diately obvious that only under one of the steps listed in that section does the court “[d]etermine[s] the guideline range ... that corresponds to the offense level and criminal history category determined”— step 7, which is set forth in § lBl.l(a)(7). In other words, as the majority agrees, the language of the calculation mandated by § lBl.l(a)(7) is the exact language that appears in the provision governing eligibility for resentencing, § IB 1.10, Application Note 1(A). See ante at 62-63. Indeed, one of the provisions explicitly cross-references the first. Accordingly, the natural reading is that Application Note l(A)’s reference to the range calculated “pursuant to § lBl.l(a)” means the guideline range calculated in step 7 of § lBl.l(a).
The Government’s contention that the definition of “applicable guideline range” may continue to refer to the mandatory minimum sentences of step 8, § lBl.l(a)(8), falls flat for that reason— under no other step of § lBl.l(a) is a range determined based on a previously calculated offense level and a .criminal history. As the majority recognizes, the computation of mandatory mínimums at step 8 does not involve sentence “ranges” or the recalculation of offense levels or criminal history categories. See id. at 63 n. 5.
Nevertheless, the Government insists that the reference to § lBl.l(a) in the amended Note 1(A) is ambiguous because “[i]t is not expressly stated that the Commission intended the term ‘applicable guideline range’ as calculated under § lBl.l(a) to refer only to the steps of § lBl.l(a)(l)-(a)(7) and not to include § lBl.l(a)(8).” The majority appears to credit that argument. Id. at 63.
But, in this context, we ought to reject reading ambiguity into the statute based on what it did not but could have said. It is true that the cross-reference in Application Note 1(A) is to § lBl.l(a) generally and not specifically to § lBl.l(a)(7). However, an explicit reference to clause (7) is not needed, given that the language of Note 1(A) already exactly tracks the language of clause (7). Requiring any further granularity from each cross-reference that may appear in the Guidelines is overkill. After all, the definition of “applicable guideline range” in Note 1(A) also mentions the “offense level and criminal history category determined pursuant to § lBl.l(a)” without specifically noting that the referenced “offense level” is determined under clauses (l)-(5) of § lBl.l(a), or that the noted “criminal history category” is determined under clause (6) of § lBl.l(a). No one would argue that such references are ambiguous because they do not particularly list the relevant subsection of § lBl.l(a). Accepting the Government’s argument would inject ambiguity into an otherwise “logical” reading of a statute, ante at 63, based on what the statute does not say. In my view, this violates basic tenets of statutory construction.[2]
*70 The Government also seizes on the second clause in the new definition of “applicable guideline range,” which specifies that such range is “determined before consideration of any departure provision in the Guidelines Manual or any variance.” According to the Government, because all eight steps in § lBl.l(a), including the mandatory minimum, are calculated before the consideration of departures or variances, “applicable guideline range” could also refer to the mandatory minimum.
But the reference to when the “applicable guideline range” is determined does not matter for purposes of this analysis. The guideline range calculated at step 7 of § lBl.l(a) is “determined before consideration of any departure provision in the Guidelines Manual or any variance.” While it is true that the mandatory minimum of step 8 is also determined “before consideration” of departures or variances, so too are all the other calculations mandated by § lBl.l(a). The argument could only work by inserting the word “immediately” so that the definition of “applicable guideline range” would be that which is “determined immediately before consideration” of any departure or variance. But that is not what Application Note 1(A) says.
The Government’s remaining arguments based on the Application Notes to § 1B1.10 are not persuasive. The additional language in Application Note 1(A) merely clarifies that regardless of the effect of a substantive amendment on the range calculated at step 7, a defendant is not eligible for resentencing if he was instead sentenced to a statutory minimum and not to a sentence based on the guideline range. But this is irrelevant in the cases before us as Petitioners were not sentenced to a statutory mandatory minimum. But see United States v. Glover, 686 F.3d 1203 (11th Cir.2012) (refusing to grant relief under Amendment 759 to defendant not sentenced to statutory minimum); United States v. McClain, 691 F.3d 774 (6th Cir.2012) (same). And there is no basis in the language of Application Note 3 to draw a distinction between defendants whose guidelines range was higher than their mandatory mínimums and those whose range was below it, and a reading supporting such result is contrary to the clear statutory purpose of the FSA — to lower the sentences of all crack-cocaine offenders. See also Doe, 564 F.3d at 318 (Fuentes, J., concurring).
.In sum, because I believe that the language of the statute at issue here makes clear that the FSA and its amendments had the effect of lowering Petitioners’ “applicable guideline range,” no foray into other provisions of the Guidelines is necessary, nor do we need to invoke the rule of lenity. Our role is to give meaning to these plain words in light of the overall purpose of the statute, and in particular the amendments to the crack-cocaine guidelines mandated by the FSA. Our statutory inquiry should be at an end. See Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (“[I]n interpreting a statute, a court should always turn first to [this] one, cardinal canon before all others.... When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.”) (internal quotation marks omitted).[3]
*71 B. Third Circuit Cases Decided Since The Enactment of Amendment 759
The Government also contends that cases decided since the enactment of Amendment 759 support its view that the approach in Doe remains good law. I disagree.
The most relevant cases are those involving career offenders, where we have held that defendants exposed to career offender guidelines but granted departures from those guidelines are not eligible for resentencing under crack-cocaine amendments. See, e.g., United States v. Ware, 694 F.3d 527, 529, 530 (3d Cir.2012); United States v. Barney, 672 F.3d 228, 231-32 (3d Cir.2012). But Ware and Barney are consistent with my reading of “applicable guideline range” because in career offender cases the applicable guideline range is still calculated at step 7. That range is based on an applicable offense level and criminal history category that the career offender guidelines may have altered at step 6 of the calculation. In such context, it makes perfect sense to say that the “applicable guideline range ... is 'the range dictated by the Career Offender Guidelines.’ ” Ware, 694 F.3d at 535 (quoting Barney, 672 F.3d at 232). Athough a court may then calculate an alternative guideline range after granting a departure, it remains the case that the career offender guidelines range is calculated at step 7, and that such range is not affected by the FSA. By contrast, when a defendant is exposed to a statutory minimum, neither the offense level nor criminal history category change — the range corresponding to those levels has already been calculated at step 7.
C. Whether Pétitioners’ Sentences Were “Based On” a Guidelines Range
Petitioners must also demonstrate that their sentence was “based on” a Guidelines range. See Thompson, 682 F.3d at 290. Herbert’s substantial cooperation agreement stated the parties’ view that the crack-cocaine range was reasonable. When the District Court granted the Government’s motion for a sentence below the mandatory minimum, it also adopted the crack-cocaine guideline range and sentenced defendant within that range. Thus, Herbert’s sentence was factually “based on” a guidelines range.
The Government nevertheless has suggested that our decision in United States v. Winebarger, 664 F.3d 388, 396 (3d Cir.2011), means that Herbert’s sentence could not legally be “based on” a guidelines range. In Winebarger, which was decided after Herbert was sentenced, we held that it was improper for a sentencing court to consider factors other than those relating to the defendant’s assistance in deciding how far below the statutory minimum to depart, but did not preclude consideration of the seriousness of the offense in deciding to limit the sqope of a departure. Winebarger, 664 F-Sd at 396 (citing United States v. Casiano, 113 F.3d 420, 430 (3d Cir.1997)). Thus, Winebarger does not categorically preclude defendants like Herbert from meeting the first part of the test required for resentencing.[4]
*72 D. Conclusion
I do not disagree with the majority’s analysis of why application of the rule of lenity would also require us to vacate Petitioners’ sentences. See ante at 65-67. But to justify application of the rule in the first place, we must face more than “a difficult interpretative question.” Id. at 66. I do not find such grievous ambiguity.
Although these cases appear to be frustratingly complex, they are not. While the parties foray into other cases and other provisions of the Guidelines, this is unnecessary because our post-Noe jurisprudence has not addressed squarely the issue presented here; only Amendment 759 speaks directly to that question and does so in a clear manner. That amendment, in my view, clearly states that the “applicable guideline range” of a defendant is calculated at § 1B1.1(a)(7), even if he is exposed to a statutory mandatory minimum. I would give effect to this language by deciding this case as a matter of statutory construction. Nothing in the remainder of the application notes to § 1B1.10 or other provisions of the Guidelines changes this result. So long as the defendant was not sentenced to the statutory minimum, he is eligible for resentencing based on the FSA.
Accordingly, I concur in the judgment vacating Petitioners’ sentences but cannot join the reasoning used to reach that result.

. To be fair, the Government’s argument was recently accepted by the Eleventh Circuit in a case where the defendant, unlike the Petitioners, was sentenced to the mandatory minimum. United States v. Hippolyte, 712 F.3d 535 (11th Cir.2013). The Court reasoned that the reference to § IB 1.1 (a) must be a reference to step 8 because under § IB 1.1 (a) “one necessarily is required to take into account the mandatory minimum sentences that may be statutorily required,” id, at 541, but despite this held that Hippolyte was ineligible for resentencing because “the new definition of applicable guideline range ... nowhere mentions statutorily required mandatory minimum sentences” and "has nothing to do with mandatory mínimums.” Id. Because it is inconsistent to conclude that the new resentencing eligibility criteria both has "nothing to do" with mandatory mínimums but also refers to the mandatory mínimums calculated at *70 step 8 of § IB 1.1 (a), I find unpersuasive the reasoning of Hippolyte.

. The other provisions the majority cites do not change this analysis. The failure of the Historical Notes to § IB 1.10 to explicitly endorse my reading of "applicable guidelines range” does not inject ambiguity into the clear language of the statute. Were a statute’s legislative history's failure to endorse a proposed reading of a statute a sufficient rea *71 son to reject such reading, few statutory interpretation cases would be resolved by the courts.

. In a subsequent submission the Government conceded that Winebarger does "not play a role in the government's primary argument.” Govt. 28(j) Letter of June 25, 2012 at 4-5. Nevertheless, the Government still contends that "a below-mandatoiy sentence resting on a cooperation motion is never 'based on’ an alternative guideline range.” Id. at 5.