**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10996

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ZENO HIGGS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cr-60167-WPD-1

_____

Before NEWSOM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

On December 29, 2022, Zeno Higgs pleaded guilty to a charge of knowingly and unlawfully reentering the United States after having been previously removed, in violation of 8 U.S.C.

§ 1326(a) and (b)(1).  He was sentenced to a term of twelve months and one day, plus three years of supervised release.  As one of his special conditions of supervision, Higgs agreed that, if he left and reentered the United States within his "term of probation," he would "report to the nearest U.S. Probation Office within 72 hours" of his arrival.  If removed, he would not reenter "the United States without the prior written permission of the Undersecretary for Border and Transportation Security."  Higgs was released from federal custody and began his term of supervised release on February 23, 2024.  On April 18, 2024, Higgs was deported.

But on September 20, 2024, a probation officer, Jason Jacoby, petitioned the district court for a warrant for Higgs's arrest, averring that Higgs had committed six violations of his supervised-release conditions.[1]  Among those violations, Higgs was accused of illegal reentry after removal in violation of 8 U.S.C. § 1326(a) and (b)(1) (the same crime as his underlying offense), reentering the United States without the written permission of the Undersecretary for Border and Transportation Security, and failing to report to the U.S. Probation Office within 72 hours of his arrival.  On March 19, 2025, the district court held a revocation hearing on these and other alleged violations.

At the hearing, Higgs admitted that, after he was deported, he paid a man $3,000 to ferry him by boat from the Bahamas back to the United States, where he disembarked into the shallow waters

---

[1] Officer Jacoby filed a superseding petition on March 6, 2025, adding a seventh violation.

off of Broward County, Florida, and "swam to the beach." He testified that he did not enter through a "port of entry," checked in with no government officials, and never presented identification "to anybody." Additionally, he admitted that he was in the United States illegally for more than 72 hours before attempting to inform authorities of his presence in the country. The district court, therefore, found Higgs guilty of violating the terms of his supervision, including by reentering the United States illegally and without written permission and failing to report to the Probation Office upon return. The district court then revoked Higgs's supervised release and sentenced him to 17 months' imprisonment.

Higgs now appeals the district court's revocation of his supervised release and imposition of a 17-month term of imprisonment. Higgs argues that the district court abused its discretion when it considered hearsay evidence during the revocation hearing because the court failed to conduct a balancing test under *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994), resulting in the district court finding him guilty of violating his terms of supervised release on the basis of unreliable evidence. Second, Higgs argues that the district court abused its discretion in crafting his above-guideline sentence because it impermissibly relied on 18 U.S.C. § 3553(a)(2)(A) and Higgs's foreign criminal history contained in his presentence investigation report ("PSI"). After careful review, we affirm the revocation of Higgs's supervised release and the sentence imposed by the district court.

## I.

First, Higgs argues that the district court abused its discretion by relying on hearsay to find him guilty of violating his supervised release. Higgs contends, specifically, that the district court improperly relied on the hearsay testimony of Immigration and Customs Enforcement ("ICE") Agent Daniel Rendueles that Higgs did not have permission to reenter the United States.

We review the district court's decision to revoke a term of supervised release for an abuse of discretion. *Frazier*, 26 F.3d at 112. District courts are permitted to revoke terms of supervised release upon a finding by a preponderance of the evidence that the defendant violated a condition of his supervised release. *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010).

The Federal Rules of Evidence do not apply in supervised release revocation hearings. *Frazier*, 26 F.3d at 114. The Sixth Amendment's Confrontation Clause does not apply either, as the Sixth Amendment right to confront witnesses only applies to "criminal prosecutions." *See Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (holding that a parole revocation hearing does not constitute a "criminal prosecution"); *see also Frazier*, 26 F.3d at 113–14 (holding that there are no significant conceptual differences between a parole revocation hearing and the revocation of supervised release); *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005) (holding that "[t]he right to confrontation is not a sentencing right," and that the district court did not err when it considered hearsay testimony to prove a defendant's prior convictions).

However, just because the Federal Rules of Evidence and the Confrontation Clause do not apply to supervised release revocation hearings does not make the admission of hearsay testimony "automatic," as defendants at revocation hearings are still "entitled to certain minimal due process requirements." *Frazier*, 26 F.3d at 114. As such, when determining whether to admit hearsay testimony at supervised release revocation hearings, the district court "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *Id.*

A district court may admit hearsay evidence at sentencing when there are "sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." *United States v. Zlatogur*, 271 F.3d 1025, 1031 (11th Cir. 2001) (quotation marks omitted). In order to successfully challenge a district court's revocation of a term of supervised release on the basis that it relied on improper hearsay evidence, a defendant must show "(1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). The defendant bears the burden of proving that the court "explicitly relied on" the information. *Id.*

Even if the district court failed to conduct a *Frazier* balancing test and erred in admitting and relying on hearsay evidence, that error can be deemed harmless if the court properly considered evidence—including the defendant's own statements—that

overwhelmingly demonstrated that the defendant breached the terms of his supervised release. *Frazier*, 26 F.3d at 114; *see also Ghertler*, 605 F.3d at 1270 (considering the defendant's testimony when analyzing whether sufficient evidence supported the district court's sentencing determinations); *United States v. Moore*, 22 F.4th 1258, 1270 n.11 (11th Cir. 2022) (holding that regardless of whether the district court erred in admitting hearsay testimony at the defendant's supervised release revocation hearing, such error was harmless because the court properly considered evidence that overwhelmingly demonstrated that the defendant breached his supervised release terms).

Here, it appears that the district court did err in failing to conduct a *Frazier* balancing test, instead overruling Higgs's hearsay objection on the ground that "hearsay is admissible on a violation of supervised release." However, we conclude that this error was harmless because Higgs has not met his burden of showing that the district court "explicitly relied on" ICE Agent Rendueles's testimony when it found Higgs guilty of violating the terms of his supervised release. *See Ghertler*, 605 F.3d at 1269. The record, instead, reflects that the district court relied on Higgs's own testimony, in which Higgs admitted that he paid a man $3,000 to bring him to the United States by boat, got off near the beach, and swam to shore, bypassing authorities. The court also noted that Higgs admitted to being in the United States illegally for more than 72 hours before attempting to turn himself in. Based on Higgs's testimony, the district court found that there was sufficient circumstantial evidence to support a finding that Higgs breached the terms of his

supervised release. Because any *Frazier* error was harmless, and because the evidence overwhelmingly demonstrated that Higgs did, in fact, breach the terms of his supervised release, we conclude that the district court did not abuse its discretion when it found Higgs guilty of violating his supervised release.

## II.

Second, Higgs challenges the reasonableness of his revocation sentence. He argues that the district court "focus[ed] exclusively on retributive concerns," in violation of *Esteras v. United States*, 145 S. Ct. 2031 (2025), when it upwardly varied to impose a 17-month prison sentence here.

We generally review the reasonableness of a sentence for abuse of discretion, meaning we will disturb the sentence only if the district court (1) failed to afford consideration to relevant factors that were due significant weight, (2) gave significant weight to an improper or irrelevant factor, or (3) committed a clear error of judgment in considering the proper factors.[2] *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). The court "commits a clear error of judgment when it weighs the § 3553(a) sentencing factors unreasonably." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022). Although the district court is required to consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and the

---

[2] This same standard applies to our review of a sentence imposed upon revocation of supervised release. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014).

court may attach great weight to one factor over others. *Id.* The court does not have to explicitly state on the record that it has considered all the factors or expressly discuss each of them. *United States v. Ortiz-Delgado*, 451 F.3d 752, 758 (11th Cir. 2006). Where a defendant fails to clearly state the grounds for an objection in the district court, he waives the objection on appeal, and we review only for plain error. *United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003).

When we review the reasonableness of a sentence imposed upon revocation of supervised release, we first evaluate whether "the district court committed any significant procedural error, such as miscalculating the advisory guideline range, treating the Sentencing Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016) (footnote omitted). Next, we examine "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors." *Id.*

Section § 3553(a)'s "overarching" instruction is that any sentence must be "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2). 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). These purposes include the need to "reflect the seriousness of the offense," deter criminal conduct, and "protect the public from" the defendant's future crimes. 18 U.S.C. § 3553(a)(2). In imposing a particular

sentence, the court must also consider the offense's "nature and circumstances," the defendant's "history and characteristics," the applicable guideline range, Sentencing Commission policy statements, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1), (4)–(6).

"A variance is a sentence imposed that is outside the Guidelines Manual guideline range." *United States v. Hippolyte*, 712 F.3d 535, 541 (11th Cir. 2013). If a district court imposes an upward variance, "it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (quotation marks omitted). An upward variance that is "well below the statutory maximum" indicates that the variance is reasonable. *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) (quotation marks omitted). "[H]ow bad a repeat offender a defendant is matters greatly for purposes of sentencing," and we have recognized that upward variances are justified when based on a defendant's tendency to engage in recidivism. *Id.* at 1279–80 (collecting cases).

The failure to object to factual allegations within a PSI admits those facts for the purposes of sentencing. *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). As such, a sentencing court's factual findings can be based on undisputed facts within a PSI. *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006).

In *Esteras*, the Supreme Court recently clarified that a district court may not consider § 3553(a)(2)(A), or "the need to exact retribution for the defendant's underlying crime," when revoking a defendant's term of supervised release. *Esteras*, 145 S. Ct. at 2040. A court may consider the needs to deter, incapacitate, and rehabilitate, but it "cannot consider the nature and circumstances of the [underlying] offense as relevant to § 3553(a)(2)(A)'s retributive focus." *Id*. at 2043. Notably, *Esteras* did not consider whether retribution for the violation of the conditions of supervised release can factor into a revocation decision. *See id*. at 2040 n.5 ("tak[ing] no position" on whether "retribution *for the violation of the conditions of the supervised release* . . . . is a permissible consideration" in revocation proceedings). The Supreme Court also made a "few observations" regarding appellate review of this issue, noting that if the defendant failed to make a district court aware that it may be impermissibly relying on § 3553(a)(2)(A), then the defendant's appeal of the issue is governed by plain-error review. *Id*. at 2045. Under plain-error review, the district court's revocation order should be affirmed "unless it is 'clear' or 'obvious' that the district court actually relied on § 3553(a)(2)(A)—because it did so expressly or by unmistakable implication." *Id*.

Here, Higgs did not raise the specific objection below that the district court considered an impermissible § 3553(a) factor, so we review for plain error. We conclude that the district court did not plainly err because it is neither "clear" nor "obvious" from the record that the district court "actually relied on" § 3553(a)(2)(A) when crafting Higgs's sentence. *Esteras*, 145 S. Ct. at 2045.

In explaining its sentence at the revocation hearing, the district court considered mitigating circumstances, including the fact that Higgs has a history of mental illness.  The district court then walked through Higgs's many arrests and convictions and his five deportations from the United States.  The court noted that Higgs has a history of reoffending, "of not following the rules, [and] of resisting arrest."  The court added that "a departure up to 17 months is justified based on [Higgs's] criminal activity and his lack of respect for the law and to follow the rules."

According to Higgs, his revocation sentence was unreasonable and must be vacated because the district court's comments quoted above reflect that the court was "focused on backward-looking, retributive factors, and the Supreme Court has recently prohibited that approach."  By contrast, the government argues that the district court commented on Higgs's history of criminality to "highlight the need[ ] for" the "forward-looking § 3553(a) goals" of "deterrence and incapacitation," not a general need to reflect the seriousness of the offense, to promote respect for the law, or to provide just punishment for the offense under § 3553(a)(2)(A).

On review of the record, it's not clear that the government's read of the transcript is right, but nor is there a "clear" indication that the district court "actually relied on" the factors listed in § 3553(a)(2)(A) "either expressly or by unmistakable implication." *Esteras*, 145 S. Ct. at 2045.  That is enough to doom Higgs's argument on plain-error review.  What's more, even if the district court did consider the need to exact retribution, it may have done so not

to punish Higgs for his underlying criminal conviction, but to "sanction [him] for failing to abide by the conditions of the court-ordered supervision" (*i.e.*, for reentering the United States without permission and failing to report to a U.S. Probation Office upon reentering)—an issue on which the Supreme Court has taken no position. *Id*. at 2040 n.5. In any event, on this record and on plain-error review, we cannot say that the district court's revocation of Higgs's supervised release was "clear[ly]" or "obvious[ly]" reliant on § 3553(a)(2)(A), as opposed to the "forward-looking ends" of deterrence or incapacitation. *Id*. at 2041, 2045. Therefore, Higgs has failed to show that the district court plainly erred under *Esteras*.

Finally, Higgs argues that his revocation sentence must also be vacated because the district court improperly relied on "unreliable[ ] foreign priors from [his] 2022 PSI." However, the district court was allowed to consider Higgs's foreign criminal history as contained in his PSI, because, as Higgs concedes on appeal, he failed to object to those facts at his original sentencing, so the facts were deemed admitted. *See Wade*, 458 F.3d at 1277 ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes."). Higgs insists that he did object to the district court's reliance on his Bahamian priors at his revocation sentencing, but he offers no case law supporting his view that a district court abuses its discretion by considering previously admitted facts at a revocation hearing. Regardless, "reliable hearsay can be considered during sentencing," *Zlatogur*, 271 F.3d at 1031, and we think facts that a defendant has himself admitted are sufficiently reliable for these purposes, *see United States v. Wilson*,

25-10996          Opinion of the Court              13

183 F.3d 1291, 1301 (11th Cir.1999) ("A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the information is sufficiently reliable."); *cf. United States v. Milano*, 32 F.3d 1499, 1501 (11th Cir. 1994) (holding that the district court did not err "by refusing to consider [the appellant's] objections to the PSI" at the probation revocation hearing because the appellant "elected not to make clear and specific objections to information in the PSI . . . . at the initial sentencing hearing").[3]  We thus conclude that the district court did not abuse its discretion when it considered Higgs's foreign criminal history as detailed in the PSI.

The district court's imposition of an above Guideline sentence is supported by sufficiently compelling reasons, and it is neither procedurally nor substantively unreasonable.  Therefore, we affirm the revocation of Higgs's supervised release and the sentence imposed by the district court.

**AFFIRMED.**

---

[3] "The analysis of the revocation proceedings relating to probation and supervised release are essentially the same." *United States v. Mitsven*, 452 F.3d 1264, 1266 n.1 (11th Cir. 2006) (internal quotations omitted).