**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 11-4359/11-4494/12-1034
_____

UNITED STATES OF AMERICA

v.

ALBERT SAVANI, aka Pops,

Appellant in No. 11-4359.


_____


UNITED STATES OF AMERICA

v.

SEAN HERBERT, a/k/a Bounty

SEAN HERBERT,

Appellant in No. 11-4494.


_____

UNITED STATES OF AMERICA

v.

RICHARD ROE,

Appellant in No. 12-1034.

_____

On Appeal from the United States District Court
for the Middle District and the Eastern District of
Pennsylvania
(D. C. Nos. 3-07-cr-00393-001; 3-06-cr-00283-001;
2-07-cr-00283-001)
District Judges:  Honorable Michael M. Baylson,
Honorable Thomas I. Vanaskie and
Honorable James M. Munley
_____

Argued on July 12, 2012

Before:  FUENTES, HARDIMAN and ROTH, <u>Circuit
Judges</u>

(Opinion filed: June 10, 2013)


James V. Wade, Esquire
Federal Public Defender
Middle District of Pennsylvania
Frederick W. Ulrich, Esquire

Assistant Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA   17101

        Counsel for Appellants Albert Savani
        and Sean Herbert

Sarah S. Gannett, Esquire **(Argued)**
Assistant Federal Defender
Christy Unger, Esquire
Brett G. Sweitzer, Esquire
Assistant Federal Defender
Supervising Appellate Attorney
Leigh M. Skipper, Esquire
Chief Federal Defender
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 540 West – Curtis Center
601 Walnut Street
Philadelphia, PA   19106

        Counsel for Appellant Richard Roe


Bernadette A. McKeon, Esquire
Kathy A. Stark, Esquire
Robert A. Zauzmer, Esquire **(Argued)**
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA   19106

        Counsel for Appellee

———————

O P I N I O N

———————

**ROTH**, Circuit Judge:

The question presented in this consolidated appeal is whether appellants, Albert Savani, Sean Herbert, and Richard Roe,[1] are eligible for reductions of their sentences pursuant to 18 U.S.C. § 3582(c)(2). In each case, the appellant was convicted of a cocaine base (crack) related offense, the government moved for a downward departure due to the appellant's substantial assistance, and the District Court granted the departure and sentenced the defendant below the statutory mandatory minimum. Shortly thereafter, the Fair Sentencing Act of 2010 (FSA) became law, and the United States Sentencing Commission approved Amendment 750, a retroactive amendment, which lowered the base offense levels applicable to crack cocaine offenses. In light of Amendment 750, appellants moved to further reduce their sentences.

Despite the government's willingness at the time of the original sentencing to have appellants sentenced below the mandatory minimum sentence, the government opposed the FSA motions in each case on the basis that the original

————————————

[1] On February 27, 2012, Roe filed an unopposed motion to proceed under pseudonym, which we will grant.

4

sentences were governed by the mandatory minimums. The government contends that in this situation, in which the guidelines range is below the statutory mandatory minimum sentence, the mandatory minimum is defined as the "guideline sentence." Although the qualifying amount of cocaine base necessary to trigger the mandatory minimum sentence has now been increased, the government asserts nevertheless that the duration of the statutorily required minimum sentence, the "guideline sentence," has not been changed; thus, the appellants are still subject to the mandatory minimum sentence. The district courts denied the motions on this basis.

On appeal, appellants contend that the district courts erred in denying their motions because (1) their terms of imprisonment were, at least in part, based on a sentencing range that has subsequently been lowered by the Sentencing Commission and (2) a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission. With respect to the latter, appellants assert that this Court's interpretation in *United States v. Doe*, 564 F.3d 305 (3d Cir. 2009), of the term "applicable guideline range" is superseded by the Sentencing Commission's November 2011 revisions to the Guidelines, which included, for the first time, a definition of the phrase "applicable guideline range." For the reasons set forth below, we agree that *Doe* has been superseded. We conclude that defendants, who are convicted of crack cocaine offenses and whose original sentences were below the mandatory minimum applicable to them because of substantial assistance to the government, are not barred for policy reasons from seeking a reduction of sentence pursuant to § 3582(c)(2). We will, therefore, vacate the orders of the district courts and remand these cases for further proceedings.

## I. Background

The facts regarding Savani, Herbert, and Roe are essentially similar.

### A. Albert Savani

In May 2008, Savani entered into a cooperation plea agreement with the government and pled guilty to one count of conspiracy to distribute, and to possess with intent to distribute, more than 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. At that time, the base offense level dictated by the crack cocaine guideline for this conviction was 30. *See* U.S.S.G. § 2D1.1(c) (Nov. 2007). Savani received a two-level reduction for his minor role in the offense and a three level reduction for acceptance of responsibility, yielding a total adjusted offense level of 25. Based upon his total offense level of 25 and a criminal history category of II, Savani's initial guideline sentencing range was 63-78 months of imprisonment. *See* U.S.S.G. § 5A. However, because of the amount of crack cocaine involved in the offense, Savani was subject to a ten-year mandatory minimum sentence, pursuant to 21 U.S.C. § 841(a)(1)(A). *See* U.S.S.G. § 1B1.1(h) (Nov. 2007). Therefore, his guideline sentence was deemed to be 120 months. *See* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

The plea agreement also provided that, if Savani provided substantial assistance to the government, the government might request the court to depart below the

applicable mandatory minimum, the applicable guideline range, or both, when imposing his sentence. At Savani's sentencing, the government moved, pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5k1.1, for the court to depart from the mandatory minimum and to impose a sentence within the Sentencing Guidelines range of 63 to 78 months' imprisonment. The District Court not only granted the motion to depart, it departed further than the government had requested and imposed a sentence of 46 months, which was below the mandatory minimum.

Savani died on January 29, 2013.

### B. Sean Herbert

In January 2008, Herbert entered into a cooperation plea agreement with the government and pled guilty to one count of possession with intent to distribute in excess of 50 grams of crack cocaine and powder cocaine, in violation of §§ 841(a)(1) and 841(b)(1)(A). In the plea agreement, the parties agreed that Herbert was involved in the distribution of more than 50 and less than 150 grams of crack cocaine and more than 300 grams and less than 400 grams of powder cocaine. They also agreed that a sentence within the applicable range of the Sentencing Guidelines would be a reasonable sentence. At that time, the base offense level dictated by the crack cocaine guideline for Herbert's conviction was 30. *See* § 2D1.1(c) (Nov. 2007). After receiving a three level downward adjustment, his total adjusted offense level was 27. Based upon this total offense level and his criminal history category of III, Herbert's initial guideline sentencing range was 87-108 months of imprisonment. *See* § 5A. However, because of the amount of

7

crack cocaine involved in the offense, Herbert was subject to a ten-year mandatory minimum, under § 841(a)(1)(A). *See* § 1B1.1(h) (Nov. 2007). Therefore, the guideline sentence was deemed to be the 120 months mandatory minimum. *See* § 5G1.1(b).

The plea agreement also provided that if Herbert provided substantial assistance to the government, the government might request a departure below the statutory mandatory minimum and/or the guideline range. At Herbert's June 2008 sentencing, the government moved, pursuant to § 3553(e) and U.S.S.G. § 5k1.1, for the court to depart below the applicable mandatory minimum to impose a sentence of 110 months. The District Court granted the motion and, after considering additional factors, sentenced Herbert to 98 months of incarceration.

### C. Richard Roe

In April 2008, Roe entered into a cooperation plea agreement with the government and pled guilty to two counts of distribution of five grams or more of crack cocaine and two counts of distribution of 50 grams or more of crack cocaine, all in violation of § 841(a)(1). As part of the plea agreement, he stipulated that his offense involved 189.6 grams of crack cocaine. At that time, the base offense level for that amount of crack cocaine was 32, *see* § 2D1.1(c) (Nov. 2007); Roe then received a three-level reduction for acceptance of responsibility, yielding a final offense level of 29. With this offense level and his criminal history category of V, Roe's initial guideline sentencing range was 140-175 months' imprisonment. *See* § 5A. However, due to a prior drug conviction, Roe was subject to a statutory mandatory

8

minimum sentence of 240 months. *See* 21 U.S.C. § 841(b)(1)(B); § 1B1.1(h) (Nov. 2007). Because the mandatory minimum sentence exceeded the initial guideline sentencing range, the mandatory minimum became the guideline sentence. *See* § 5G1.1.

Roe's plea agreement also contained a provision that if he provided substantial assistance to the government, it might move for a sentence below the statutory mandatory minimum. At Roe's April 2008 sentencing, the government moved under § 5K1.1 and § 3553(e) for a reduction of Roe's sentence. The District Court granted the government's motion and sentenced Roe to 96 months' imprisonment.

### D. Fair Sentencing Act of 2010

On August 3, 2010, after appellants' sentencings, the FSA became law. Designed as "[a]n Act To restore fairness to Federal cocaine sentencing," *United States v. Dixon*, 648 F.3d 195, 197 (3d Cir. 2011) (quoting Fair Sentencing Act of 2010, Pub. L. 111–220, § 2, 124 Stat. 2372, 2372 (2010)), one provision of the FSA modified the mandatory minimum crack cocaine penalties by raising the quantities required to trigger the five-year and ten-year mandatory minimum penalties, *id.* (citing Pub. L. 111–220, § 2). These changes reduced the disparity in triggering quantity between powder cocaine and crack cocaine from 100:1 to approximately 18:1. *Id.*

The FSA also directed the Sentencing Commission to promulgate emergency amendments to conform the Sentencing Guidelines to the statutory changes. *Id.* (citing Pub. L. No. 111-220, § 8). The Sentencing Commission complied with this directive by issuing temporary emergency

9

guideline amendments in 2010, *see id.* at 197-98 (citing U.S.S.G. Supp. to App. C, amend. 748 (Supp. 2010) (amending U.S.S.G. § 2D1.1(c)) (effective Nov. 1, 2010)), which became permanent and retroactively applicable on November 1, 2011, *see* U.S.S.G., App. C., amends. 750, 759. One of these, Amendment 750, amended U.S.S.G. § 2D1.1, reducing by the same 18:1 ratio the amount of crack cocaine necessary to trigger the mandatory minimums. *See* U.S.S.G., App. C., amend. 750.

Based upon Amendment 750, appellants filed motions for reduction of sentence pursuant to § 3582(c)(2). In all three cases, the district courts denied the motions.[2] These appeals followed.

## II. Jurisdiction

The district courts had jurisdiction pursuant to 28 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291, and our review is plenary. *Doe*, 564 F.3d at 307 n.2.

## III. Discussion

Congress has generally prohibited district courts from "modify[ing] a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(2),

---

[2] In *Savani* and *Herbert*, the district courts denied the motions without explanation. In *Roe*, the court applied § 3582(c)(2) and concluded that a sentencing reduction would not be consistent with the applicable policy statements issued by the Sentencing Commission.

however, offers a limited exception to this general rule of finality:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . the court may reduce the term of imprisonment, . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

In *United States v. Flemming*, 617 F.3d 252, 257 (3d Cir. 2010), we interpreted this provision to provide that if a defendant fails to satisfy either of these conditions, a sentencing range lowered by the Sentencing Commission or a reduction consistent with the applicable policy statements, the court cannot consider a sentence reduction. *Id.* On the other hand, if the defendant satisfies both requirements, the district court may exercise its discretion to determine whether a reduction of sentence is merited. *Id.*

In considering whether appellants are eligible for a reduction of sentence, we turn first to the second condition because that is the condition which we held in *Doe* prevented offenders, who were subject to a mandatory minimum sentence, from seeking relief under the FSA.

*Doe* also involved offenders who had been sentenced below the mandatory minimum. John and Jane Doe were

11

sentenced respectively to 84 and 41 months' imprisonment. *Doe*, 564 F.3d at 307-08. Their sentences reflected a downward departure, pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, from their statutory mandatory minimum sentences of life imprisonment for John and 20 years for Jane. Their mandatory minimums exceeded their initial guideline sentencing ranges of 151-188 months imprisonment for John and 121-151 months for Jane. *Doe*, 564 F.3d at 307-08. After the Does were sentenced, the Sentencing Commission promulgated Amendment 706, a retroactive amendment, which revised § 2D1.1 by lowering the base offense levels for most quantities of crack cocaine. *Id.* at 308. The Does then filed motions for sentencing reductions under § 3582(c)(2), *id.*, contending that they were eligible for resentencing because Amendment 706 lowered their "applicable guideline ranges,"[3] *id.* at 311.

Because at that time the Sentencing Guidelines failed to contain a definition of the phrase "applicable guideline range," the *Doe* Court examined the Application Instructions contained in U.S.S.G. § 1B1.1 for guidance. Based upon its interpretation of these instructions, the Court reasoned that the Guidelines "language and structure" established that the

---

[3] The term "applicable guideline range" appears in U.S.S.G. § 1B1.10, Reduction of Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement), which provides for the reduction of sentences pursuant to § 3582(c)(2). One exclusion barring such a reduction occurs if the amendment does not have the effect of lowering the defendant's "applicable guideline range." § 1B1.10(2)(B).

12

term "applicable guideline range" in § 1B1.10(a)(2)(B) referred to the sentence calculated under § 5G1.1(b). *Id.* at 311. In that regard, the Court noted that the Application Instructions for the Guidelines specified that they must be applied in a particular order, *see* U.S.S.G. § 1B1.1 (Nov. 2007), with the eighth and last step in the procedure being the calculation of all statutory mandatory minimums under § 5G1.1(b). Therefore, although the crack cocaine offense level along with the criminal history category guideline determined the initial guideline sentencing range, it was not the "applicable guideline range" because the mandatory minimum sentence replaced it and served as the basis for calculating the defendant's final pre-departure sentence.[4] *See Doe*, 564 F.3d at 311. In other words, the *Doe* Court concluded that "applicable guideline range" referred to the guideline sentence determined by the statutory mandatory minimum, which was the end product under § 1B1.1(a). *Flemming*, 617 F.3d at 262.

It is not disputed that this interpretation of "applicable guideline range" leaves appellants ineligible for relief. However, the situation has changed. Since our *Doe* opinion, the definition of "applicable guideline range" has been added to the guidelines by the retroactive November 2011 amendment which revised Application Note 1(A) to the

---

[4] In a concurring opinion Judge Fuentes noted that the language of § 1B1.10 "barely favors the majority's interpretation" and that "further guidance from the Sentencing Commission" on the meaning of the term "applicable guideline range" would be beneficial. *Doe*, 564 F.3d at 318 (Fuentes, J., concurring).

commentary of § 1B1.10. According to the revised commentary, the "applicable guideline range" is "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." U.S.S.G. § 1B1.10 cmt. n.1(A) (2011). Appellants contend that the Sentencing Commission intended this definition to supersede *Doe* and to clarify that "applicable guideline range" refers to the initial guideline range as determined by the intersection of the offense level and criminal history category under § 5A. The government, on the other hand, argues that the newly provided definition supports the *Doe* Court's interpretation of "applicable guideline range."

Although we, as a three-judge panel, are generally bound by prior decisions of this Court, we "may reevaluate a precedent in light of intervening authority and amendments to statutes or regulations." *Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir. 1996) (citing *United States v. Joshua*, 976 F.2d 844, 853 (3d Cir. 1992) (holding that a panel is "free to consider the [Sentencing] Commission's [newly adopted interpretive] commentary and, based thereon, reach a decision contrary to the holdings of [prior precedent]")). Thus, in light of the Commission's amendments, we will revisit the *Doe* Court's prior interpretation of "applicable guideline range." We will keep in mind that guidelines commentary, interpreting or explaining the application of a guideline, is binding on us when we are applying that guideline because we are obligated to adhere to the Commission's definition. *See Stinson v. United States*, 508 U.S. 36, 43 (1993).

In support of their position, appellants point out that the terminology the Commission selected for the description

14

of "applicable guideline range" mirrors, in-part, the language of § 1B1.1(a)(7). Section 1B1.1(a)(7) requires the sentencing court to calculate a defendant's initial guideline sentence by "[d]etermin[ing] the guideline range" from the table in § 5A "*that corresponds to the offense level and criminal history category determined*" in steps (a)(1)-(a)(6). § 1B1.1(a)(7) (emphasis added). In Application Note 1(A) of § 1B1.10, the Sentencing Commission defines "applicable guideline range" as "the guideline range *that corresponds to the offense level and criminal history category determined* pursuant to § 1B1.1(a) . . . ." § 1B1.10 cmt. n.1(A) (2011) (emphasis added).

We presume that this choice of language by the Sentencing Commission is deliberate. Appellants contend that the Sentencing Commission's choice to incorporate this language into the new definition of "applicable guideline range" demonstrates the Commission's intent to define the phrase as the initial guidelines sentencing range calculated under § 5A; if the Commission had not intended such a result, it would not have utilized this language. Appellants urge that the sentencing range ascertained at § 1B1.1(a)(7) is the result of the culmination of steps § 1B1.1(a)(1)-(a)(6), *i.e.*, that the steps of § 1B1.1(a)(1)-(a)(6) are the prerequisite steps the sentencing court must proceed through before it can reach step § 1B1.1(a)(7) and determine the range associated with the offense level and criminal history category. Thus, the definition's reference to § 1B1.1(a), combined with the inclusion of terminology that mirrors § 1B1.1(a)(7), indicates that the Commission intended "applicable guideline range" to refer to the intersection between the offense level and criminal history category at § 1B1.1(a)(7), not the sentence

15

required by a mandatory minimum as subsequently determined at step § 1B1.1(a)(8).[5]

Although we find appellants' argument logical, nonetheless there is ambiguity in the Sentencing Commission's new definition of "applicable guideline range." It is not expressly stated that the Commission intended the term "applicable guidelines range" as calculated under § 1B1.1(a) to refer only to the steps of § 1B1.1(a)(1)-(a)(7) and not to include § 1B1.1(a)(8). Accordingly, a second interpretation exists, *i.e.*, that a defendant's "applicable guideline range" includes all eight steps delineated under § 1B1.1(a), including § 1B1.1(a)(8). This approach is supported by the language of the amendment that the "applicable guideline range" is "determined before consideration of any departure provision in the Guidelines Manual or any variance." § 1B1.10 cmt. n.1(A) (2011). Sections 1B1.1(b) & (c) provide when departure provisions and variances must be applied. This competing interpretation, advocated by the government, assumes that because the sentencing court must consider all eight steps of § 1B1.1(a) before it applies §§ 1B1.1(b) & (c), a defendant's "applicable guideline range" cannot be ascertained until all eight steps of § 1B1.1(a) have been completed.

_____

[5] This reading conforms to the reality of the sentencing process. A defendant is not assigned a new offense level or criminal history category by operation of the mandatory minimum. Rather, the guideline range that is applicable to that offense level and criminal history category is simply trumped by the mandatory minimum sentence when the sentencing court applies step § 1B1.1(a)(8).

16

On the other hand, a reading of "applicable guideline range" as the range calculated at step § 1B1.1(a)(7) would be entirely consistent with the Commission's definition of the phrase, as long as step § 1B1.1(a)(8) was considered before applying §§ 1B1.1(b) and (c).

In the end, we must conclude that the definition of "applicable guideline range" contained in the revised Application Note 1(A) to the commentary of § 1B1.10 is ambiguous. Because the definition provided by the Sentencing Commission does not by itself resolve the issue, we will examine other provisions of the Sentencing Guidelines to determine whether they give us any insight into the Commission's definition.

## A. 2011 Historical Notes for § 1B1.10

The Historical Notes for § 1B1.10 state that the Commission revised Application Note 1 and defined "applicable guideline range" "to address an application issue" regarding "when, if at all, the [sentencing] court applies a departure provision." U.S.S.G. § 1B1.10 Historical Notes (Reason for Amendment). This need for clarification arose because of a circuit split. *Id.* Several Courts of Appeals had held that sentencing courts might consider some departures before calculating a defendant's applicable guideline range; others had held that the applicable guideline range must be determined prior to the court's consideration of any departures. *Id.* The Commission resolved this dispute by amending the commentary and clarifying that the latter approach was the proper one. *Id.* This explanation does not, however, offer any insight into whether the Commission intended the amendment to refer solely to the intersection

17

between the offense level and criminal history category, as determined by the culmination of steps § 1B1.1(a)(1)-(a)(7), or to the guideline sentence of a mandatory minimum determined at step § 1B1.1(a)(8), the final step before applying § 1B1.1(b) & (c).

Another concern with the Commission's explanation for the revision is the fact that at the time the Commission defined "applicable guideline range," it was likely aware that at least eleven Courts of Appeals had concluded that a defendant was ineligible for a sentencing reduction in circumstances in which the statutory mandatory minimum exceeded the guideline range and the defendant received a substantial assistance departure below the mandatory minimum sentence. *See, e.g.*, *United States v. Roa-Medina*, 607 F.3d 255, 260 (1st Cir. 2010); *United States v. Williams*, 551 F.3d 182, 186-87 (2d Cir. 2009); *Doe*, 564 F.3d at 311-12; *United States v. Hood*, 556 F.3d 226, 234-35 (4th Cir. 2009); *United States v. Carter*, 595 F.3d 575, 580-81 (5th Cir. 2010); *United States v. Johnson*, 564 F.3d 419, 422-23 (6th Cir. 2009); *United States v. Poole*, 550 F.3d 676, 679-80 (7th Cir. 2008); *United States v. Baylor*, 556 F.3d 672, 673 (8th Cir. 2009); *United States v. Jackson*, 577 F.3d 1032, 1034-36 (9th Cir. 2009); *United States v. Williams*, 549 F.3d 1337, 1339-42 (11th Cir. 2008); *United States v. Cook*, 594 F.3d 883, 886-89 (D.C. Cir. 2010). If the Commission intended to overrule these Courts of Appeals, why did it not explicitly say that it was doing so?

### B. Application Note 3 for § 1B1.10

In addition to defining "applicable guideline range," the Commission also revised § 1B1.10 "to change the

limitations that apply in cases in which the term of imprisonment was less than the minimum of the applicable guideline range at the time of sentencing." U.S.S.G. § 1B1.10 Historical Notes (Reason for Amendment). After the amendment, a defendant, whose original sentence had been reduced below the applicable guideline range, could seek § 3582(c)(2) relief only if he had originally been granted the reduced term as a result of substantial assistance to the government. S*ee* § 1B1.10(b)(2)(B).

In addition, Application Note 3 provides examples of how to calculate the reduced sentence under § 3582(c)(2). It then discusses § 3582(c)(2) sentence reduction when the defendant's original sentence was reduced following a government motion for substantial assistance, and states:

> The provisions authorizing such a government motion are 5K1.1 (Substantial Assistance to Authorities) (authorizing, upon government motion, a downward departure based on the defendant's substantial assistance); *18 U.S.C. 3553(e) (authorizing the court, upon government motion, to impose a sentence below a statutory minimum to reflect the defendant's substantial assistance)*; and Fed. R. Crim. P. 35(b) (authorizing the court, upon government motion, to reduce a sentence to reflect the defendant's substantial assistance).

U.S.S.G. § 1B1.10 Application Note 3 (2011) (emphasis added).

Appearing as it does in a Commentary Section directed at clarifying the reduction of sentences under § 3582(c)(2),

this last paragraph appears to contemplate that a defendant who was sentenced below his applicable mandatory minimum because he received a § 3553(e) reduction for substantial assistance, might be eligible for a sentencing reduction. If we were to hold that the "applicable guideline range" language of § 1B1.10(a)(2)(B) rendered such a defendant ineligible for a § 3582(c)(2) reduction, what is the point of the above quoted language in Application Note 3?

Another interpretation of this provision, however, supports the government's argument. In circumstances in which the initial guideline range, as determined pursuant to § 1B1.1(a)(7), exceeds the mandatory minimum sentence, and the government files a motion under § 5K1.1 and § 3553(e), courts often depart below both the guideline range and the mandatory minimum when imposing the final sentence. Accordingly, the Application Note might simply clarify that, in that scenario, a court may grant a comparable reduction below the original guideline range but not below the mandatory minimum.

### C. U.S.S.G. § 5G1.1(b)

Section 5G1.1 supports Appellants' reading of "applicable guideline range" as the intersection between the offense level and criminal history category, as calculated under § 1B1.1(a)(7). In the sentencing process, after the court completes its calculation under step § 1B1.1(a)(7), step § 1B1.1(a)(8) directs it to apply, among other provisions, § 5G1.1. Section 5G1.1, in turn, refers to the sentence that has already been calculated under § 1B1.1(a)(7) as "the applicable guideline range." U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the

maximum of the *applicable guideline range*, the statutorily required minimum sentence shall be the guideline sentence." (emphasis added)). Thus, before the sentencing court proceeds to complete the step at § 1B1.1(a)(8), the language of § 5G1.1 provides that the "applicable guideline range" has already been determined.

## D. Application Note 1(A) to U.S.S.G. § 1B1.10

The Commentary to § 1B1.10 supports the government's argument and adds further ambiguity to the meaning of "applicable guideline range." Immediately preceding the description of "applicable guideline range," the commentary states that a sentencing reduction is not authorized when "the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)." § 1B1.10 cmt. n.1(A) (2011). Although appellants assert that this provision addresses only those situations in which the imposition of a sentence below the mandatory minimum range was not due to a substantial assistance departure, no such distinction is drawn in the language of the Commentary. In regard to the above, the District Court observed that it is difficult to imagine what purpose the statement would serve if a mandatory minimum sentence was irrelevant to the determination of the applicable guideline range.

In sum, we conclude that our review of these provisions has not helped us ascertain the meaning of the Commission's definition of "applicable guideline range."

21

### E. Rule of Lenity

In circumstances in which an ambiguous criminal statute cannot be clarified by its "text, structure, history, [] purpose," *Barber v. Thomas*, ___ U.S. ___, 130 S. Ct. 2499, 2508 (2010), or reasonable inferences drawn from the overall statutory scheme, the rule of lenity provides that we must resolve that ambiguity in favor of the defendant. *Flemming*, 617 F.3d at 269 (quoting *United States v Pollen*, 978 F.2d 78, 85 (3d Cir. 1992)); *see Reno v. Koray,* 515 U.S. 50, 65 (1995) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended.") (citations and internal quotation marks omitted). Courts should not, however, apply this rule whenever confronted with a difficult interpretative question. Instead, its application is limited to instances in which there is a "grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber*, 130 S. Ct. at 2508-09 (citations and internal quotation marks omitted). We have previously held that the rule of lenity applies to the Sentencing Guidelines. *Flemming*, 617 F.3d at 271-72.

As discussed above, we believe that the guidelines are "grievous[ly] ambiguous" and hopelessly imprecise regarding the Commission's description of "applicable guideline range" contained within the revised Application Note 1(A) to the commentary of § 1B1.10. Without "guess[ing]" what the definition means, we cannot definitively resolve whether it defines the phrase as the initial sentencing range calculated under § 1B1.1(a)(7), or if it includes the statutory mandatory minimum sentence determined at step § 1B1.1(a)(8). As both interpretations are entirely plausible and nothing in the

22

guidelines provides definitive insight into the accuracy of either reading, we conclude that we must apply the rule of lenity and resolve the ambiguity in appellants' favor. *See e.g., id.* at 270-72; *United States v. Bustillos-Penna*, 612 F.3d 863, 868-69 (5th Cir. 2010) (applying rule of lenity to conclude that a provision of the Sentencing Guidelines was ambiguous).[6]

---

[6] We are aware that our decision today conflicts with the Eleventh Circuit's decision in *United States v. Glover*, 686 F.3d 1203 (11th Cir. 2012). There, the defendant was convicted of a crack-related offense and had an initial guidelines range—188-235 months' imprisonment—that was below his mandatory minimum of life in prison. *Id.* at 1204. The defendant received a downward departure for substantial assistance and a sentence of 204 months' imprisonment. *Id.* at 1205. The defendant sought a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on Amendments 750 and 759, but the Eleventh Circuit held that he was ineligible because "[the defendant]'s guidelines range was—and still is—life in prison." *Id.* at 1208.

We believe the Eleventh Circuit's decision was based on an incorrect interpretation of the phrase "applicable guidelines range." The *Glover* court began, as we did, by highlighting the importance of the phrase "applicable guideline range" to the ultimate determination of whether a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered," 18 U.S.C. § 3582(c)(2). *See Glover*, 686 F.3d at 1206. However, the Eleventh Circuit only analyzed the phrase as it appears in U.S.S.G. § 1B1.10(a)(2)(B) and Application Note 1(A) before

In reaching this result we note that we cannot view the guidelines and the definition of "applicable guideline range" in a vacuum. First, we must keep in mind that the Sentencing Commission recognizes that defendants who provide substantial assistance deserve special consideration. *See* 76 Fed. Reg. 41332-01, 41334 (July 7, 2011) (noting that "[t]he guidelines . . . have long recognized that defendants who provide substantial assistance are differently situated than other defendants," and stating that the revisions "appropriately maintain[] this distinction and further[] the

---

deciding that § 3582(c), § 1B1.10(a)(2)(B), and Application Note l(A) "all make it clear that . . . an amendment that alters the initial calculation of a guidelines range is not to be applied in a case where the difference in the initial calculation would have made no difference because a mandatory minimum would have trumped the initial calculation and dictated the final guidelines range anyway." *See Glover*, 686 F.3d at 1206. If the provisions the Eleventh Circuit analyzed were the full extent of the relevant statutory language, we would agree that "applicable guidelines range" refers to the mandatory minimum and not to the initial guidelines range. But the Eleventh Circuit did not address the use of "applicable guidelines range" as it appears in U.S.S.G. § 5G1.1(b). As we have explained, we cannot reconcile the Sentencing Commission's use of the phrase in § 5G1.1(b)— which unquestionably refers to the initial guidelines range and not to the mandatory minimum—with the Eleventh Circuit's reading of the phrase in U.S.S.G. § 1B1.10(a)(2)(B) and Application Note 1(A). For that reason, we reach a different conclusion than *Glover*.

purposes of sentencing"). Also, we must be cognizant of the general policies underlying the FSA and Amendment 750. As discussed above, after Congress adopted the FSA to remedy the disparity between crack and powder cocaine penalties, it directed the Sentencing Commission to promulgate emergency amendments to conform the guidelines to the statutory changes. One of these amendments, Amendment 750, retroactively lowered the crack cocaine base offense levels in § 2D1.1 to reflect the reduced 18:1 ratio between powder and crack cocaine adopted by the FSA.

If Appellants had been sentenced after Amendment 750 took effect, their initial guideline ranges, which served as the basis for their sentences, would have been lower. If we had interpreted "applicable guidelines range" in the manner that the government suggests, it would render appellants ineligible for sentencing reductions merely because they were sentenced prior to the adoption of retroactive Amendment 750. Such a result is antithetical to the Fair Sentencing policy concerns that motivated Congress in passing the FSA. *See Flemming*, 617 F.3d at 271-72.[7]

## IV. Conclusion

For the above reasons, we hold that, when a defendant was subject to a mandatory minimum term and was sentenced

---

[7] For the reasons stated above, insofar as *United States v. Hippolyte*, --- F.3d ----, No. 11-15933, 2013 WL 978695 (11th Cir. Mar. 14, 2013), differs in the definition of "applicable guideline range," we find it unpersuasive.

25

to a term pursuant to the guidelines but below the mandatory minimum as a result of a § 3553 motion by the government, and when the sentencing range is later lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), that defendant is eligible to move for reduction of sentence pursuant to § 3582(c)(2). Because the district courts that sentenced these defendants either held that the defendant was not eligible for a reduction because of the mandatory minimum or did not state whether the § 3553 motion was being denied as a matter of law because of the mandatory minimum or a matter of discretion, we will vacate the orders and remand the Herbert and Roe cases to their respective courts for further proceedings in accord with *Freeman v. United States*, --- U.S. ----, 131 S. Ct. 2685, 2695 (2011) (Sotomayor, J., concurring) and with the discretion of the district courts. Because Savani died while his appeal was pending, we will dismiss the appeal as moot and remand this case to the district court to abate the judgment of sentence. *United States v. DeMichael*, 461 F.3d 414, 417 (3d Cir. 2006).

26

FUENTES, Circuit Judge, concurring in part and concurring in the judgment:

I join the judgment vacating Herbert's and Roe's sentences. I concur with the majority that the new definition of "applicable guideline range" provided by Amendment 759 to the Sentencing Guidelines, which clarifies when a defendant is eligible for resentencing based on certain substantive amendments to the Guidelines, supersedes our holding in *United States v. Doe*, 564 F.3d 305 (3d Cir. 2009). *Ante* at 13-14. I write separately because, unlike the majority, I do not find any ambiguity in the new definition of "applicable guideline range." In my view, the Federal Sentencing Act of 2010 ("FSA"), made applicable to Herbert and Roe ("Petitioners") through Amendment 750 to the Guidelines, lowered their "guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a)." U.S.S.G. § 1B1.10 app. n.1(A) (2011); *see also* U.S.S.G. app. C., amend. 750 (Nov. 1, 2011). Accordingly, I would hold that Petitioners are eligible for resentencing under 18 U.S.C. § 3582(c)(2) based on the plain text of Amendment 759. I would not resort to the rule of lenity when a clear answer is provided by the language of the Guidelines.

## A.     The Text of the Application Notes to Section 1B1.10

To be eligible for resentencing consistent with 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, Petitioners must meet two requirements: (1) their sentences must be "based on" a Guidelines range, and (2) an applicable Guidelines amendment must have "the effect of lowering" that range. *United States v. Thompson*, 682 F.3d 285, 290 (3d Cir. 2012).

1

The relevant issue here is whether Petitioners meet the second part of this test based on the Fair Sentencing Act amendments to the crack-cocaine Guidelines, which ultimately turns on whether the amendments lowered Petitioners' "applicable guideline range."

In *Doe* we held that defendants such as Petitioners who were convicted of crack-cocaine related offenses and exposed to a statutory mandatory minimum sentence that exceeded their guideline range, calculated under U.S.S.G. § 1B1.1(a)(7), but were sentenced below that minimum pursuant to a substantial assistance motion based on U.S.S.G. § 5K1.1, were ineligible for resentencing. *See Doe*, 546 F.3d at 309. We reasoned that "applicable guideline range," a term then not defined by the Guidelines, referred to the statutory minimum sentence calculated at step 8 of the sentencing process, which was not affected by the crack-cocaine amendments. *Id.* at 312. We rejected the contention that "applicable guideline range" referred to the range calculated based on the defendant's offense level and criminal history category, under step 7 of the initial sentencing calculation, U.S.S.G. § 1B1.1(a)(7). *Id.* at 311.[1]

Amendment 759, however, for the first time defined "applicable guideline range" by amending Application Note 1(A) of § 1B1.10. The effect of this amendment is that the Guidelines now explain that "[e]ligibility for [resentencing]

_____

[1] These steps were designated as (a) through (h) before November 1, 2010 but on that date were re-designated as (1) through (8) in order to "adopt[] the three-step approach followed by a majority of circuits in determining the sentence to be imposed." U.S.S.G. app. C, amend. 741 (effective Nov. 1, 2010).

2

under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment . . . that lowers . . . the guideline range *that corresponds to the offense level and criminal history category determined* pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." U.S.S.G. § 1B1.10 app. n.1(A) (2011) (emphasis added); *see also* U.S.S.G. app. C., amend. 759 (Nov. 1, 2011).

This language could not be clearer in demonstrating that our conclusion in *Doe* was incorrect. Following the Application Note's reference to § 1B1.1(a), it is immediately obvious that only under one of the steps listed in that section does the court "[d]etermine[s] the guideline range . . . *that corresponds to the offense level and criminal history category determined*"—step 7, which is set forth in § 1B1.1(a)(7). In other words, as the majority agrees, the language of the calculation mandated by § 1B1.1(a)(7) is the exact language that appears in the provision governing eligibility for resentencing, § 1B1.10, Application Note 1(A). *See ante* at 15-16. Indeed, one of the provisions explicitly cross-references the first. Accordingly, the natural reading is that Application Note 1(A)'s reference to the range calculated "pursuant to § 1B1.1(a)" means the guideline range calculated in step 7 of § 1B1.1(a).

The Government's contention that the definition of "applicable guideline range" may continue to refer to the mandatory minimum sentences of step 8, § 1B1.1(a)(8), falls flat for that reason—under no other step of § 1B1.1(a) is a range determined based on a previously calculated offense level and a criminal history. As the majority recognizes, the computation of mandatory minimums at step 8 does not

3

involve sentence "ranges" or the recalculation of offense levels or criminal history categories. *See id.* at 16 n.5.

Nevertheless, the Government insists that the reference to § 1B1.1(a) in the amended Note 1(A) is ambiguous because "[i]t is not expressly stated that the Commission intended the term 'applicable guideline range' as calculated under § 1B1.1(a) to refer only to the steps of § 1B1.1(a)(1)-(a)(7) and not to include § 1B1.1(a)(8)." The majority appears to credit that argument. *Id.* at 16.

But, in this context, we ought to reject reading ambiguity into the statute based on what it did not but could have said. It is true that the cross-reference in Application Note 1(A) is to § 1B1.1(a) generally and not specifically to § 1B1.1(a)(7). However, an explicit reference to clause (7) is not needed, given that the language of Note 1(A) already exactly tracks the language of clause (7). Requiring any further granularity from each cross-reference that may appear in the Guidelines is overkill. After all, the definition of "applicable guideline range" in Note 1(A) also mentions the "offense level and criminal history category determined pursuant to § 1B1.1(a)" without specifically noting that the referenced "offense level" is determined under clauses (1)-(5) of § 1B1.1(a), or that the noted "criminal history category" is determined under clause (6) of § 1B1.1(a). No one would argue that such references are ambiguous because they do not particularly list the relevant subsection of § 1B1.1(a). Accepting the Government's argument would inject ambiguity into an otherwise "logical" reading of a statute,

4

*ante* at 16, based on what the statute *does not* say. In my view, this violates basic tenets of statutory construction.[2]

The Government also seizes on the second clause in the new definition of "applicable guideline range," which specifies that such range is "determined before consideration of any departure provision in the Guidelines Manual or any variance." According to the Government, because all eight steps in § 1B1.1(a), including the mandatory minimum, are calculated before the consideration of departures or variances, "applicable guideline range" could also refer to the mandatory minimum.

But the reference to *when* the "applicable guideline range" is determined does not matter for purposes of this

---

[2] To be fair, the Government's argument was recently accepted by the Eleventh Circuit in a case where the defendant, unlike the Petitioners, was sentenced to the mandatory minimum. *United States v. Hippolyte*, __ F.3d __, No. 11-15933, 2013 WL 978695 (11th Cir. Mar. 14, 2013). The Court reasoned that the reference to § 1B1.1(a) must be a reference to step 8 because under § 1B1.1(a) "one necessarily is required to take into account the mandatory minimum sentences that may be statutorily required," *id.*, at *4, but despite this held that Hippolyte was ineligible for resentencing because "the new definition of applicable guideline range . . . nowhere mentions statutorily required mandatory minimum sentences" and "has nothing to do with mandatory minimums." *Id.* Because it is inconsistent to conclude that the new resentencing eligibility criteria both has "nothing to do" with mandatory minimums but also refers to the mandatory minimums calculated at step 8 of § 1B1.1(a), I find unpersuasive the reasoning of *Hippolyte*.

5

analysis. The guideline range calculated at step 7 of § 1B1.1(a) *is* "determined before consideration of any departure provision in the Guidelines Manual or any variance." While it is true that the mandatory minimum of step 8 is also determined "before consideration" of departures or variances, so too are all the other calculations mandated by § 1B1.1(a). The argument could only work by inserting the word "immediately" so that the definition of "applicable guideline range" would be that which is "determined *immediately* before consideration" of any departure or variance. But that is not what Application Note 1(A) says.

The Government's remaining arguments based on the Application Notes to § 1B1.10 are not persuasive. The additional language in Application Note 1(A) merely clarifies that regardless of the effect of a substantive amendment on the range calculated at step 7, a defendant is not eligible for resentencing if he was instead sentenced to a statutory minimum and not to a sentence based on the guideline range. But this is irrelevant in the cases before us as Petitioners were not sentenced to a statutory mandatory minimum. *But see United States v. Glover*, 686 F.3d 1203 (11th Cir. 2012) (refusing to grant relief under Amendment 759 to defendant not sentenced to statutory minimum); *United States v. McClain*, 691 F.3d 774 (6th Cir. 2012) (same). And there is no basis in the language of Application Note 3 to draw a distinction between defendants whose guidelines range was higher than their mandatory minimums and those whose range was below it, and a reading supporting such result is contrary to the clear statutory purpose of the FSA—to lower the sentences of all crack-cocaine offenders. *See also Doe*, 564 F.3d at 318 (Fuentes, J., concurring).

6

In sum, because I believe that the language of the statute at issue here makes clear that the FSA and its amendments had the effect of lowering Petitioners' "applicable guideline range," no foray into other provisions of the Guidelines is necessary, nor do we need to invoke the rule of lenity. Our role is to give meaning to these plain words in light of the overall purpose of the statute, and in particular the amendments to the crack-cocaine guidelines mandated by the FSA. Our statutory inquiry should be at an end. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute, a court should always turn first to [this] one, cardinal canon before all others. . . . When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (internal quotation marks omitted).[3]

## B.     Third Circuit Cases Decided Since The Enactment of Amendment 759

---

[3] The other provisions the majority cites do not change this analysis. The failure of the Historical Notes to § 1B1.10 to explicitly endorse my reading of "applicable guidelines range" does not inject ambiguity into the clear language of the statute. Were a statute's legislative history's failure to endorse a proposed reading of a statute a sufficient reason to reject such reading, few statutory interpretation cases would be resolved by the courts.

The Government also contends that cases decided since the enactment of Amendment 759 support its view that the approach in *Doe* remains good law.  I disagree.

The most relevant cases are those involving career offenders, where we have held that defendants exposed to career offender guidelines but granted departures from those guidelines are not eligible for resentencing under crack-cocaine amendments.  *See, e.g.*, *United States v. Ware*, 694 F.3d 527, 529, 530 (3d Cir. 2012); *United States v. Barney*, 672 F.3d 228, 231-32 (3d Cir. 2012). But *Ware* and *Barney* are consistent with my reading of "applicable guideline range" because in career offender cases the applicable guideline range is still calculated at step 7.  That range is based on an applicable offense level and criminal history category that the career offender guidelines may have altered at step 6 of the calculation.  In such context, it makes perfect sense to say that the "applicable guideline range . . . is 'the range dictated by the Career Offender Guidelines.'"  *Ware*, 694 F.3d at 535 (quoting *Barney*, 672 F.3d at 232).  Although a court may then calculate an alternative guideline range after granting a departure, it remains the case that the career offender guidelines range is calculated at step 7, and that such range is not affected by the FSA.  By contrast, when a defendant is exposed to a statutory minimum, neither the offense level nor criminal history category change—the range corresponding to those levels has already been calculated at step 7.

## C.     Whether Petitioners' Sentences Were "Based On" a Guidelines Range

Petitioners must also demonstrate that their sentence was "based on" a Guidelines range. *See Thompson*, 682 F.3d at 290. Herbert's substantial cooperation agreement stated the parties' view that the crack-cocaine range was reasonable. When the District Court granted the Government's motion for a sentence below the mandatory minimum, it also adopted the crack-cocaine guideline range and sentenced defendant within that range. Thus, Herbert's sentence was factually "based on" a guidelines range.

The Government nevertheless has suggested that our decision in *United States v. Winebarger*, 664 F.3d 388, 396 (3d Cir. 2011), means that Herbert's sentence could not legally be "based on" a guidelines range. In *Winebarger*, which was decided after Herbert was sentenced, we held that it was improper for a sentencing court to consider factors other than those relating to the defendant's assistance in deciding how far below the statutory minimum to depart, but did not preclude consideration of the seriousness of the offense in deciding to *limit* the scope of a departure. *Winebarger*, 664 F.3d at 396 (citing *United States v. Casiano*, 113 F.3d 420, 430 (3d Cir. 1997)). Thus, *Winebarger* does not categorically preclude defendants like Herbert from meeting the first part of the test required for resentencing.[4]

**D.      Conclusion**

---

[4] In a subsequent submission the Government conceded that *Winebarger* does "not play a role in the government's primary argument." Govt. 28(j) Letter of June 25, 2012 at 4-5. Nevertheless, the Government still contends that "a below-mandatory sentence resting on a cooperation motion is never 'based on' an alternative guideline range." *Id.* at 5.

I do not disagree with the majority's analysis of why application of the rule of lenity would also require us to vacate Petitioners' sentences. *See ante* at 22-26. But to justify application of the rule in the first place, we must face more than "a difficult interpretative question." *Id.* at 22. I do not find such grievous ambiguity.

Although these cases appear to be frustratingly complex, they are not. While the parties foray into other cases and other provisions of the Guidelines, this is unnecessary because our post-*Doe* jurisprudence has not addressed squarely the issue presented here; only Amendment 759 speaks directly to that question and does so in a clear manner. That amendment, in my view, clearly states that the "applicable guideline range" of a defendant is calculated at § 1B1.1(a)(7), even if he is exposed to a statutory mandatory minimum. I would give effect to this language by deciding this case as a matter of statutory construction. Nothing in the remainder of the application notes to § 1B1.10 or other provisions of the Guidelines changes this result. So long as the defendant was not sentenced to the statutory minimum, he is eligible for resentencing based on the FSA.

Accordingly, I concur in the judgment vacating Petitioners' sentences but cannot join the reasoning used to reach that result.