**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3007
_____

UNITED STATES OF AMERICA

v.

DEVIN ANTONIO HOCKADAY,
a/k/a STEAL


Devin Antonio Hockaday,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-06-cr-00144-002)
District Judge:  Honorable C. Darnell Jones, II
_____

Submitted Under Third Circuit LAR 34.1(a)
May 17, 2013

Before:  SMITH, FISHER, and CHAGARES, Circuit Judges.

(Opinion Filed:  August 14, 2013)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Devin Antonio Hockaday pled guilty to charges of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 and of failure to appear for jury selection and trial in violation of 18 U.S.C. § 3146. The District Court sentenced him to 135 months of incarceration. Hockaday appealed his sentence, but this Court affirmed the District Court's judgment of sentence in a non-precedential opinion. He now appears before this Court seeking a modification of that sentence pursuant to 18 U.S.C. § 3582(c)(2). For the reasons discussed below, we will affirm the District Court's denial of Hockaday's motion for a reduction of his sentence.

## I.

We write solely for the benefit of the parties and will therefore only briefly recite the facts of this case.

Hockaday admitted in his written plea agreement and during his plea colloquy that during the second half of 2005, he conspired to distribute between 150 and 500 grams of cocaine base, also known as crack cocaine. Appendix ("App.") 56-59, 85-86. After ruling on Hockaday's objections to the presentence investigation report, the District Court determined that his advisory Guidelines range was 135 to 168 months, based on a total offense level of 33 and a criminal history category of I. On July 27, 2009, the District Court sentenced Hockaday to 120 months on the drug conspiracy count, which was the mandatory minimum, and 15 months on the failure to appear count, for a total sentence of 135 months. Hockaday appealed on several grounds, but this Court affirmed the District Court's sentence on August 12, 2010.

In November 2011, Hockaday filed a pro se motion to modify his term of imprisonment under 18 U.S.C. § 3582(c)(2). The District Court appointed counsel, who filed a brief in support of Hockaday's motion. After the District Court denied the motion, Hockaday timely appealed.[1]

## II.

The District Court had jurisdiction to review Hockaday's motion under 18 U.S.C. § 3231. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We review the District Court's legal interpretation of relevant statutes and guidelines de novo, and we review the District Court's ultimate ruling on a motion to reduce a sentence pursuant to § 3582(c)(2) for abuse of discretion. United States v. Mateo, 560 F.3d 152, 154 (3d Cir. 2009).

The Fair Sentencing Act ("FSA") was enacted on August 3, 2010. The FSA reduced the crack-to-powder sentencing ratio from 100-to-1 to 18-to-1 by increasing the drug amounts triggering mandatory minimum sentences for crack cocaine offenses. Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012). It also instructed the Sentencing Commission to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." Id. (quotation marks omitted). A set of emergency Guidelines amendments changing the offense levels associated with drug offenses took effect on November 1, 2010, and a permanent set took their place one year later. Id.

---

[1] After the Notice of Appeal was filed, Hockaday filed a pro se motion for reconsideration, which the District Court denied.

A.

Hockaday first argues that in light of the Supreme Court's reasoning in Dorsey and this Court's reasoning in United States v. Dixon, 648 F.3d 195 (3d Cir. 2011), he should benefit from the FSA because his appeal was under direct review at the time the legislation went into force. Those cases, however, addressed defendants who were situated differently than Hockaday is here. In Dixon, this Court considered whether a defendant who committed his offense before the FSA was enacted but sentenced after enactment benefitted from the FSA's more forgiving mandatory minimum sentences for cocaine base possession. After considering both the general saving statute and the will of Congress as manifested in the FSA, we concluded that "the FSA requires application of the new mandatory minimum sentencing provisions to all defendants sentenced on or after August 3, 2010, regardless of when the offense conduct occurred." Dixon, 648 F.3d at 203 (emphasis added). In so holding, we specifically noted that this conclusion did not conflict with our earlier holding in United States v. Reevey, 631 F.3d 110 (3d Cir. 2010), that the FSA did not apply retroactively to defendants who, like Hockaday, committed their offenses and were sentenced before that act was enacted. Id. at 198 n.3.[2]

---

[2] Hockaday argues that Reevey is inapposite because the defendants there were challenging their sentence directly and not asking for relief under § 3582(c)(2). While this may be true, it is a distinction without meaning in the context of the arguments here. Both Hockaday and the defendants in Reevey were subject to mandatory minimum sentences. If all that a defendant needed to do to escape Reevey's holding that the FSA is not retroactive was to bring a separate motion under § 3582(c)(2) rather than challenge his sentence directly, the opinion would mean very little. No part of the Court's conclusion in Reevey relies on the fact that the defendants there sought application of the FSA on a direct challenge to their sentences and Hockaday has offered no compelling

4

The Supreme Court in Dorsey reached the same conclusion, even though it acknowledged that "application of the new minimums to pre-Act offenders sentenced after August 3 will create . . . disparities" between "pre-Act offenders sentenced before August 3 and those sentenced after that date." Dorsey, 132 S. Ct. at 2335. These disparities, the Supreme Court reasoned, "reflect[] a line-drawing effort" and "will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." Id. This explanation illustrates why extending Dixon and Dorsey's concern with creating a consistent and fair cocaine sentencing regime to reach any defendant affected by the old mandatory minimums would go too far: taken to their logical conclusions, these concerns would call into question every single sentence ever based on a crack cocaine mandatory minimum. Not even Hockaday advances this argument.[3]

Instead, Hockaday contends that he is more like defendants who committed their offenses pre-FSA but were sentenced post-FSA than defendants who both committed their offenses and were sentenced pre-FSA because although the District Court issued his sentence before the FSA became law, his case was on direct appeal on August 3, 2010,

argument as to why the FSA should be considered a retroactive statute only for the purposes of a § 3582(c)(2) motion.

[3] The Court is aware of the recent decision by the Court of Appeals for the Sixth Circuit in United States v. Blewett, 2013 WL 2121945, --- F.3d ---- (6th Cir. May 17, 2013), in which the Court held that because application of racially discriminatory mandatory minimum crack sentences to defendants sentenced prior to the enactment of the FSA would violate the Fourteenth Amendment's Equal Protection Clause, the "Act should apply to all defendants, including those sentenced prior to its passage." Id. at *1. Because Blewett conflicts with this Court's precedent, see Reevey, 631 F.3d at 115, and because the Blewett court relied on arguments not presented here, we decline to follow its lead.

when the FSA was signed into law. Hockaday points to nothing, though, in the text of the law suggesting that Congress intended to change the applicable law with respect to mandatory minimums for the narrow class of defendants whose sentences were on direct appeal at the time that the law was signed into action. Instead, he invokes the common law rule of abatement, which ends all prosecutions that have not reached "final disposition in the highest court authorized to review them" when the underlying statute was repealed. Bradley v. United States, 410 U.S. 605, 607-08 (1973). Even if we were to apply that rule in this context, it would not help Hockaday because it abates only prosecutions, which "terminate[] . . . when sentence is imposed," id. at 609, and Hockaday's sentence was imposed before the FSA became law. As the Supreme Court pointed out in Dorsey, application of the new minimums under the FSA will inevitably involve a line-drawing process. We are convinced by our precedent, and the precedent of our sister circuits and of the Supreme Court, that the appropriate line has been drawn between those defendants who were sentenced pre- and post-FSA.

B.

Hockaday tries to clear a second path to relief under § 3582(c)(2) by arguing that, mandatory minimum aside, his sentencing range was lowered from 135 to 168 months to 87-108 months by the Sentencing Commission's post-FSA amendments to the Guidelines and he therefore qualifies as a defendant sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). In determining eligibility for a sentence modification, the Sentencing Guidelines instruct that a court should "begin by 'determin[ing] the amended guideline range that would

6

have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." Dillon v. United States, 130 S. Ct. 2683, 2691 (2010) (quoting U.S.S.G. § 1B1.10(b)(1)) (alteration in original). In light of this Court's recent opinion in United States v. Savani, 2013 WL 2462941, --- F.3d ---- (3d Cir. June 10, 2013), Hockaday may be correct that a defendant's "applicable guideline range" for purposes of § 3582(c)(2) is calculated before consideration of any mandatory minimums applicable to the defendant. Id. at *9 (applying the rule of lenity to conclude that the "applicable guideline range" as defined by commentary to the Sentencing Guidelines does not include a statutory mandatory minimum sentence).

The holding in Savani, however, is limited to the class of defendants who, although they were subject to a mandatory minimum term, were "sentenced to a term pursuant to the guidelines but below the mandatory minimum as a result of a § 3553 motion by the government." Id. The sentencing courts in the cases before the Court in Savani decided to depart below the mandatory minimums and imposed sentences based on the defendants' sentencing ranges.[4] Here, while the District Court did note that the mandatory minimum sentence lined up with the bottom of Hockaday's sentencing range, it is clear that Hockaday's sentence was based on the mandatory minimum to which he was subject. This key difference not only explains why the holding in Savani is not applicable to Hockaday, but also goes to the heart of the reason that he is ineligible for relief: Hockaday was not sentenced based on the Guidelines, which have been amended

---

[4] We recognize that several of the defendants in Savani actually received sentences below their advisory Guidelines range. This does not mean, however, that their sentences were not based on their respective ranges.

with retroactive effect; rather, he was sentenced based on a statutory mandatory minimum, which the FSA did not amend with retroactive effect.

## III.

For the foregoing reasons, we will affirm the District Court's order.